FOURTH DIVISION
March 9, 2006

Nos. 1-01-1447, 1-04-2466 (consolidated)

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 91 CR 18484 |
| | ) | |
| OILY THOMAS, | ) | Honorable |
| | ) | Marcus R. Salone, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Oily Thomas appeals from an order of the circuit court dismissing his petition for postconviction relief and his petition for relief from judgment. The appeals have been consolidated, and for the reasons that follow, we affirm.

Following a jury trial in June 1992, defendant was convicted of first-degree murder and sentenced to an extended term of 75 years in prison for the shooting of Edward McComb. At trial, four witnesses testified concerning the events of the shooting.

Lolitha Holmes, McComb's fiancçe, testified that, on June 4, 1991, she met with McComb after picking up her child from school at approximately 2:30 p.m. She stated that she and McComb spoke in front of 4215 S. Calumet Avenue and that defendant and two other men, including Tyrone Daniels, approached them. The three men then fired weapons in their direction and chased McComb while Holmes fled in another direction. When Holmes returned to the scene, she saw McComb on the ground by a tree in a lot behind his mother's house. Holmes testified that she had seen defendant

on 15 or 20 occasions prior to the day of the shooting and gave his name to the police. Holmes identified defendant as one of the shooters in a photo array and in a police lineup conducted on July 10, 1991.

Darrell Barney, McComb's cousin, also testified that he witnessed the shooting. Barney stated that he had seen defendant on approximately 10 occasions prior to the shooting. He saw three men, including defendant and Daniels, walk up to Holmes and McComb and shoot McComb. Barney stated that he saw McComb flee to a vacant lot where the assailants continued shooting at him as he fell by a tree. Barney observed defendant touch McComb's nose and mouth to check his breathing. He testified that the man he described to police as defendant was 5 feet 7 inches and weighed 135 pounds. (Defendant later testified that he was 6 feet tall and weighed 180 pounds at the time of the incident.) Barney identified the defendant in both a photo array and a lineup.

Bobby Wilson testified that he was playing basketball across the street from 4215 S. Calumet Ave. at the time of the shooting. He had seen defendant approximately 100 times prior to that day. Wilson stated that he saw three men, including defendant and Daniels, approach McComb as he spoke to Holmes. Daniels shot McComb in the shoulder and defendant and the third gunmen began to fire their weapons. Wilson stated that he saw the three men chase McComb until he fell by a tree where they continued to fire at him. Wilson saw defendant pick up McComb's head to see if he was dead.

Wilson testified that he was 14 years old at the time of the shooting. On cross-examination, he stated that he was in the sixth grade at the time of the shooting. Wilson

2

also identified defendant in a lineup.

Finally, Renard Jackson testified that, on the day of the shooting, he heard gunshots while inside his house. He ran to the front window but was unable to see anything, so he ran to his back porch. He then saw defendant and another man carrying guns as they entered a black truck and fled on Prairie Street, one block west of Calumet.

On cross-examination, Jackson denied telling the police at the scene that all he saw were two black men he could not identify running toward a black Chevrolet Blazer. Jackson stated that he knew defendant by his nickname, "Head," and had seen him 20 or 30 times at a neighborhood pool hall. Jackson also identified defendant in a line-up as one of the assailants.

In defense, defendant claimed he was at a salon during the shooting and called his friend, Jasper Armond, and his hairdresser's assistant, Tracy Johnson, as alibi witnesses. Both testified that defendant was at the salon on the day of the shooting from approximately 1 p.m. until approximately 5 or 6 p.m.

The jury found defendant guilty of first degree murder. The trial court found the crime exceptionally brutal and heinous and indicative wanton cruelty and sentenced defendant to an extended term of 75 years.

We granted defendant leave to file a late notice of appeal due to the ineffectiveness of his appointed counsel. People v. Thomas, No. 1-95-2662 (1996) (unpublished order under Supreme Court Rule 23). Defendant's appointed appellate counsel, the public defender of Cook County, filed a petition for leave to withdraw

pursuant to Anders v. California, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967),

contending that there were no meritorious issues for appeal.  In his response to

counsel's motion, defendant maintained actual innocence and argued that two of the

witnesses who had testified against him at trial had recanted their testimony.  This court

granted counsel's motion and affirmed defendant's conviction, finding that the record

gave no indication of recantation by any of the witnesses.  People v. Thomas, No. 1-93-

4307 (1997) (unpublished order under Supreme Court Rule 23).

In April 2000, defendant filed a writ of *habeas corpus* in federal district court,

which denied the writ as time-barred.  United States ex rel. Thomas v. Welborn, No. 00

C 2601 (N.D. Ill. 2000).

In February 2001, defendant filed a *pro se* petition for postconviction relief

pursuant to section 122-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/122 *et

seq.* (West 2000)) on the grounds that his sentence violated constitutional standards as

set forth in Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed.2 d, 120 S. Ct. 2348

(2000).  The circuit court denied the petition, finding that defendant's appeal from his

sentence was not pending at the time Apprendi was decided. Defendant filed a notice of

appeal, which this court stayed pending the resolution of his petition for relief from

judgment, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-

1401 (West 2002)).

In February 2003, defendant, through his attorneys, filed a section 2-1401

petition, contending that newly discovered evidence and recantation of prior testimony

entitled him to a new trial.  Defendant argued that the police suppressed an exculpatory

4

statement by a witness to the murder, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and that several of the witnesses who testified against him at trial had perjured themselves. The State filed a motion to dismiss, contending, *inter alia*, that defendant's petition was not timely filed pursuant to section 2-1401(c) of the Code of Civil Procedure (735 ILCS 5/2-1401(c) (West 2002)). The circuit court denied the State's motion and granted defendant an evidentiary hearing.

At the hearing, Arie Lee Stogner, a neighbor of McComb and Daniels at the time of the shooting, stated that she witnessed the murder and was certain that Daniels did not kill McComb. Stogner testified that she saw a tall, light-skinned man chase the victim while shooting at him. The man wore a blue jogging suit and a blue cap pulled down to cover his face. However, in her statement to defendant's investigator in 2001, Stogner testified that the man she saw wore a red cap. Stogner said that the shooter's hair was pulled into a ponytail and had red hues and that he was accompanied by a short, heavyset man. She stated that she saw McComb run into a field holding his head and that he stood by a tree. McComb then ran to his house in an attempt to enter the back door. The tall, light-skinned man was shooting the entire time and continued to chase him until her view was blocked by a garage.

Stogner further testified that she witnessed the arrival of the police and the arrest of Daniels. When the police arrived , they announced a "code blue," went upstairs, and broke down the door to Daniels' home. The police brought Daniels downstairs in his underwear. Stogner stated that she told an investigating officer with blonde hair and a moustache, and wearing a tan jacket with patches at the elbows, what she saw.

5

Renard Jackson provided a court-reported statement that he lied during his testimony at defendant's trial. Jackson attested that he was inside his home at the time of the crime and came outside when he heard the shots. He also stated that a week after the shooting, the victim's brother asked him to testify against defendant and gave him $200 to $250 worth of cocaine in exchange for his testimony.

At the hearing, Jackson testified that he did not remember what happened at the time of the crime. He stated that he did not see the shooting and that no one gave him cocaine in exchange for testifying against defendant. Jackson testified that, at the time of the hearing, he was on medication for depression, hearing voices, and anger and that the medication made it difficult for him to understand things. However, he was not taking the medication in 2001 when he made his statement.

Donovan Weathers, who claimed he had been involved in an intimate relationship with Lolitha Holmes, testified that Holmes told him that she did not witness the shooting.
Jonny Selvie also claimed to have had an intimate relationship with Holmes. Selvie signed an affidavit stating that Holmes told him that she lied about being an eyewitness to the shooting and that she was picking up her daughter from school at the time.

Lolitha Holmes testified for the State and recounted the testimony she had given at defendant's trial. She denied ever meeting Weathers, admitted knowing Selvie, but denied telling him that she did not witness the shooting.

Sergeant Thomas McDermott testified that he responded to the scene of the crime soon after the shooting occurred. McDermott saw Daniels, who matched the

6

clothing description of one of the offenders, run into an apartment. Daniels was subsequently arrested. McDermott stated that neither he nor any of the other responding officers yelled "code blue" and that it was not a police term.

Sergeant Stanley Zaborac testified that on the day of the shooting he was the watch commander of Area One Violent Crimes and that none of the detectives assigned to the case had blonde hair and a moustache. Zaborac stated that he had never heard the term "code blue." Zaborac also stated that all eyewitnesses were taken to Area One for full investigation.

Finally, the parties stipulated that Officer Thomas Eich and Detective James Cassidy, who investigated the murder on the day it occurred, would testify that no one gave them a description matching the one Stogner testified to, and that if any witness had, they would have noted it in their reports.

The trial court rendered an oral decision from the bench, stating:

> "I remember Miss Stogner's testimony, but I've also read it again. And I listened to Miss Stogner's testimony and Miss Lyon's argument together with my experience in association with police work, I must tell you that I could not arrive at a motive for the police officers to conceal this information. ***
>
> I can understand now why Miss Stogner might have some motive to testify as she did in support of this petition.***
>
> Miss Lyon, I don't know if you know or not, but I am

7

myself a former police officer. I've never heard the phrase Code Blue. Never. I don't know if that's a product of her vivid imagination or something more. But whatever the case, it raises a question of credibility.

Knowing the police as I believe I do, they would just as soon arrest some light-complected male found anywhere between 35th and 55th as to arrest Mr. Thomas. You really don't care. It's close enough. Let the court sort it out. And I should not be so indicting of the police, but I don't really think it matters a heck of a lot if we arrest someone closer to the description as provided by eyewitnesses as any other person. There's absolutely no motive for the police to make this concealment.

I don't know that the incident as Miss Stogner describes it in support of this petition ever, ever occurred.

Based on the credibility of the witnesses, this petition is respectfully denied."

Defendant now appeals the denials of both his petition for postconviction relief and his petition for relief from judgment. He contends that the circuit court erred in dismissing an exculpatory witness (Stogner) as incredible on the basis of evidence that was not adduced at the evidentiary hearing, that the circuit court erred in not finding a Brady violation, that the circuit court erred in failing to consider the cumulative weight of

8

exculpatory testimony and impeached and recanted trial testimony, and that the circuit court erred in denying defendant's postconviction <u>Apprendi</u> claim.

As a preliminary matter, we note that defendant has failed to state the appropriate standard of review for the orders from which he appeals.  Pursuant to Supreme Court Rule 341(e) (3), an appellant's brief must include a statement of the applicable standard of review for each issue, with citation to authority.  Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(3), eff. October 1, 2001.  It is within our discretion to strike an appellant's brief and dismiss his or her appeal for failure to comply with Rule 341.  <u>Niewold v. Fry</u>, 306 Ill. App. 3d 735, 737 (1999).  However, the striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the procedural violations interfere with or preclude our review.  <u>Moomaw v. Mentor H/S, Inc.</u>, 313 Ill. App. 3d 1031, 1035 (2000).  The parties here have fully explained the issues presented and provided an adequate record on which to base our review of the trial court's decisions.  Accordingly, we will not penalize defendant so severely and will consider the merits of his appeal.  See <u>Niewold</u>, 306 Ill. App. 3d at 737.

For purposes of clarification, this court reviews a circuit court's ruling on a section 2-1401 petition in a criminal case under an abuse of discretion standard.  <u>People v. Coleman</u>, 206 Ill. 2d 261, 289 (2002).  We will not disturb the trial court's determination absent an abuse of its discretion.  <u>People v. Sanchez</u>, 131 Ill. 2d 417, 420 (1989).

We initially deal with the State's contention that defendant's section 2-1401 petition was untimely filed, that its late filing was not excused due to fraudulent

concealment of newly discovered evidence, and that the circuit court was therefore correct in denying it. Defendant responds that the State previously raised this defense in its motion to dismiss and that the circuit court declined to dismiss the petition on timeliness grounds. Defendant also argues that his petition sufficiently alleged fraudulent concealment of Stogner's exculpatory testimony.

In criminal proceedings, a petition filed pursuant to section 2-1401 seeks to correct all errors of fact occurring in the prosecution of a case, that were unknown to the petitioner and the court at the time of trial, which, if then known, would have prevented the judgment from being entered. People v. Johnson, 352 Ill. App. 3d 442, 444 (2004). Such a petition must be filed no later than two years after the entry of the order of judgment, excepting that the party seeking relief is under legal duress or disability, or the ground for relief has been fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2004).

The State argues that defendant failed to prove that the police and prosecution fraudulently concealed the exculpatory statement Arie Lee Stogner had given to officers at the time of the murder as well as the perjured testimony of Lolitha Holmes and Renard Jackson, and that the circuit court should have dismissed defendant's petition for relief from judgment on the basis that it was not timely filed within two years of the entry of his conviction and sentence. Defendant counters that due diligence on his part would not have unearthed the newly discovered evidence within the two-year statutory period. There also seems to be a discrepancy between the parties as to whether the circuit court ruled on the State's argument of timeliness as grounds for dismissal.

10

In general, an appellee may raise any arguments in support of the circuit court's judgment, even where they were not raised before the circuit court, provided they have a sufficient factual basis before the circuit court. People v. Pinkonsly, 207 Ill. 2d 555, 563 (2003). However, our supreme court has held that where the State fails to object to a criminal defendant's section 2-1401 petition on the grounds of timeliness before the circuit court, the State waives that argument for purposes of appeal. Pinkonsly, 207 Ill. 2d at 564.

Here, the State raised timeliness in its motion to dismiss defendant's section 2-1401 petition. It is apparent from the record the circuit court denied the motion in an oral pronouncement. Accordingly, the State has not waived this argument on appeal.

A petitioner seeking exemption from the statutory limitation period must allege facts demonstrating that the opposing party affirmatively attempted to prevent the discovery of the purported grounds for relief and must offer factual allegations demonstrating good faith and due diligence in attempting to uncover such matters either before trial or within the limitations period. People v. McLaughlin, 324 Ill. App. 3d 909, 918 (2001). Fraudulent concealment sufficient to toll the two-year limitation period requires affirmative acts or representations designed to prevent discovery of the cause of action or ground for relief. People v. Coleman, 206 Ill. 2d 261, 290-91 (2002).

Here, defendant maintains that the investigating officers and the prosecution affirmatively concealed Stogner's statements concerning a suspect in the shootings whose physical description did not match that of defendant. While the absence of Stogner's statements in discovery could have been achieved by an affirmative act

11

performed by someone affiliated with the State, their absence also could have been the result of mere omission or mistake, not a deliberate act or misrepresentation as to their existence. Defendant has not alleged any affirmative acts of concealment or suppression. He only argues that, because Stogner's statements were not made available to the defense and she was not called as a witness at trial, her statements must therefore have been actively concealed by the prosecution. We do not believe that defendant's allegations are sufficient to overcome the statutory limitation for filing a section 2-1401 petition and that the State's argument for dismissal on that basis has some merit. However, because the circuit court resolved defendant's petition on its merits following an evidentiary hearing, and in the interest of judicial economy, we elect to examine the merits of defendant's petition.

Defendant initially contends that the trial court improperly based its denial of his section 2-1401 petition on its own personal experiences lying outside the record. He argues that the trial court used its experience in police work to determine the credibility of defendant's witness, Arie Lee Stogner, and offered no notice of this use until the hearing was over, denying defendant the opportunity to refute, cross-examine, or rebut it. The State responds that the trial court's comments concerning its police work were minor excursions from the record and that the court properly based its decision on competent evidence. We agree.

Deliberations of the trial court are limited to the record, and any determination based upon private knowledge of the court, untested by cross-examination, constitutes a denial of due process. People v. Wallenberg, 24 Ill. 2d 350, 354 (1962). Every

12

presumption will be accorded the trial court that it considered only admissible evidence in reaching its conclusion. Wallenberg, 24.Ill. 2d at 354; People v. Griffith, 158 Ill. 2d 476, 496-498 (1994).  However, defendant may rebut this presumption with recorded statements by the trial court. Wallenberg, 24.Ill. 2d at 354.

In rendering an oral decision, the trial judge made reference to the fact that he was a former police officer and that he could not perceive a motive on behalf of the investigating officers in this case to conceal or withhold any statement Stogner would have made to them concerning the murder.  However, we do not believe that these comments concerning the trial court's personal experience were the basis for the court's ruling.

Deliberations of the trial court are limited to the record. Wallenberg, 24 Ill. 2d at 354.  In Wallenberg, the defendant's alibi maintained that no gas stations existed on a certain road in Chicago. Wallenberg, at 24 Ill. 2d at 353-54. No evidence was admitted to refute this assertion. However, the trial court rebutted the testimony through its own personal knowledge that there were gas stations on the road. Wallenberg, 24 Ill. 2d at 354.  We find the circumstances of the present case distinguishable from those of Wallenberg.  Here, defendant presented Stogner's testimony and said testimony was rebutted by the testimony of police officers who were at the scene of the shooting. Sergeant McDermott testified that no one yelled "code blue" and that it was not a police term.  Sergeant Zaborac also testified that "code blue" was not a police term. Therefore, testimony concerning the credibility of the term "code blue" was properly before the court and was not conjured entirely from the judge's own personal

13

experience. Although the trial court alluded to past police work while discussing the evidence, these allusions amounted to benign rhetorical comments on the evidence properly before the court. Consequently, these comments did not amount to an invalid basis for the court's judgment, which it specifically stated rested on the credibility of the witnesses.

Due to the officers' testimony, defendant possessed sufficient opportunity to respond. There was ample opportunity to cross-examine the officers and to rehabilitate the testimony of Stogner concerning the events of the day and, more specifically, the use of the term "code blue." Therefore, defendant possessed the opportunity to test the evidence.

In the end, the trial court utilized evidence in the record, not its own experience, in determining that Stogner's testimony was not credible. This determination was acceptable concerning the evidence before the court. In a written statement, Stogner claimed that the assailant wore a red hat; but she later testified that he wore a blue one. Stogner stated that she spoke to an officer wearing a tan jacket with leather patches at the elbows who had blonde hair and a moustache; the officers contradicted her, testifying that no one with blonde hair and a moustache ever worked on the case. Stogner testified that the police yelled "code blue" but the officers' testimony denied the existence of that phrase as a police term.

We conclude that the trial court did not abuse its discretion in considering this evidence while determining the credibility of Stogner and any statements of personal knowledge were benign rhetorical comments that did not serve as a basis for the court's

14

determination. Accordingly, we find that defendant was not denied due process in this instance.

Defendant next contends that the circuit court erred in rejecting his Brady claim, arguing that Stogner's statements to police and her testimony at the evidentiary hearing were central to his defense and therefore material and likely would have altered the result of his trial. He argues that the circuit court failed to reach a finding as to whether Stogner's testimony was withheld and whether it would have influenced the trial's outcome, and instead focused on the police and the prosecution's possible motivation for withholding it.

In criminal cases, the prosecution is required to disclose evidence that is favorable to the accused and material to either guilt or punishment. Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97. Such evidence is material if there is a reasonable probability that the result of the defendant's trial would have been different had the evidence been disclosed to the defense. People v. Harris, 206 Ill. 2d 293, 311 (2002). A reasonable probability of a differing result is one that is sufficient to undermine confidence in the trial's actual outcome. People v. Hobley, 182 Ill. 2d 404, 433 (1998).

Failure to tender such information to the defense constitutes a denial of due process. Coleman, 206 Ill. 2d at 285. This duty applies even where the defense makes no request for exculpatory evidence and where the existence of such evidence is known to the police or others acting on behalf of the government, but not to the prosecutor. Coleman, 206 Ill. 2d at 285.

Under the test for materiality, reviewing courts do not examine the sufficiency of the evidence; rather, an appellant must show that the favorable evidence could reasonably have put the whole case in such a different light as to undermine confidence in the verdict. People v. Coleman, 183 Ill. 2d 366, 393 (1998). Relief is not available pursuant to Brady unless the defendant can establish that evidence material to his guilt or punishment was improperly withheld. People v. Edwards, 195 Ill. 2d 142, 161 (2001). In making a materiality determination, courts consider the cumulative effect of all suppressed evidence favorable to the defense, rather than considering each piece individually. Hobley, 182 Ill. 2d at 433.

Here, defendant alleges that Stogner's testimony, given at an evidentiary hearing that took place in 2004, standing alone, is fully exculpatory, material, and compelling in that it differs from the versions of the shooting as related by Holmes, Barney, Wilson, and Jackson at trial in 1992. Appellate counsel makes much of the fact that Stogner's testimony at the hearing matched the trial testimony of the other witnesses with respect to the physical events of the shooting, such as where it began and where the victim eventually fell, but points out that her physical description of the shooters did not match those of defendant or Tyrone Daniels. Counsel further argues that the trial court improperly dismissed Stogner's testimony solely on the basis of her recollection of hearing an officer issue a "code blue" before arresting Daniels "amid the mayhem and confusion" following the shooting. Counsel attributes that recollection to the passage of time between the shooting and evidentiary hearing and the "mayhem and confusion" of the shooting's aftermath. Nevertheless, defendant maintains that Stogner's testimony

16

was inherently credible and uncontradicted and therefore was pivotal to his defense at trial and would have altered the outcome had the jury been allowed to hear it. He further maintains that Stogner's testimony that she spoke to an officer following the shooting and described the assailants, coupled with the officers' testimony that they canvassed the neighborhood as part of their investigation, proves that her statement was withheld from the defense.

We are unpersuaded by defendant's logic. We cannot help but be the least bit incredulous when counsel seeks to excuse an admittedly doubtful portion of Stogner's testimony (an officer uttering "code blue" before taking Daniels into custody) by noting that the shooting's aftermath was chaotic and that more than a decade elapsed between the shooting and the hearing at which she testified. We fail to see how her recollection of other details of the shooting, including the assailants' appearances, might not also be affected by the same circumstances, and how her testimony as to those aspects of the crime somehow deserved inherent believability and deference from the circuit court. We are equally unpersuaded by defendant's argument that Stogner's testimony that she spoke to the police *ipso facto* proves that her statement was suppressed and withheld from defense counsel.

Also, while defendant is correct that whether the police or prosecution act in good or bad faith in failing to disclose material evidence to the defense is irrelevant (see Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S.Ct. at 1196-97), we do not believe that the police's possible motive or absence thereof in failing to disclose Stogner's alleged statement was the sole basis for the circuit court's failure to find a Brady violation. The

17

merits of defendant's petition were much more contingent on the credibility of the witnesses testifying in his favor.

It is axiomatic that a trial court is in the best position to judge a witness's credibility and determine the weight to be afforded his or her testimony because the court has seen the witness and had the opportunity to observe his or her demeanor during testimony. People v. Frazier, 248 Ill. App. 3d 6, 13 (1993). In proceedings in which the outcome depends on the credibility of a testifying witness, a reviewing court will not substitute its judgment for the circuit court's and will defer to the circuit court's findings of fact unless they are against the manifest weight of the evidence. Eychaner v. Gross, 202 Ill. 2d 228, 251-52 (2002).

Here, the circuit court obviously found that Stogner's testimony was not credible and granted it little weight, if any, in deciding to deny defendant's section 2-1401 petition. In reviewing her testimony and that of the investigating officers and other witnesses, we cannot conclude that such a determination was against the manifest weight of the evidence. Moreover, in reviewing Stogner's testimony in light of the testimony of four other eyewitnesses at defendant's trial, we find that Stogner's alleged statement to police, if indeed it existed, and any hypothetical testimony she might have given, would not have had a reasonable probability of affecting the jury's verdict and therefore was not material. Accordingly, we find that no Brady violation occurred in this instance and that defendant's petition for relief from judgment was properly denied.

Defendant next contends that the circuit court erred in denying his section 2-1401 petition in that it failed to consider the cumulative weight of the evidence while

18

determining whether Stogner's undisclosed statement as well as Holmes' impeached and Jackson's recanted testimony undermined the actual outcome of defendant's trial. He argues that the court based its ruling solely on the believability of Stogner's testimony rather than considering her testimony in addition to the recantation of Jackson's trial testimony and Weathers' and Selvie's testimony.

We cannot help but construe this particular claim as an additional challenge to the sufficiency of the evidence presented at the section 2-1401 hearing and the circuit court's assessment of its credibility. As stated above, this court grants great deference to a trial court's position to hear and assign weight to the evidence presented to it, and we will not reverse the court's findings unless they are manifestly erroneous. Having already upheld the trial court's judgment as to Stogner's testimony, we turn to its assessment of that given by Weathers, Selvie, and Jackson.

A criminal conviction obtained through the State's knowing use of false testimony constitutes a violation of due process. People v. Brown, 169 Ill. 2d 94, 103 (1995). A defendant seeking relief from a judgment based on false testimony may do so under section 2-1401 and need not establish that the prosecution knowingly used false testimony. Brown, 169 Ill. 2d at 107-08. Where a criminal defendant seeks to overturn his conviction on the basis of perjured testimony, the defendant must not merely allege perjury by State's witnesses, but must present clear, factual allegations of perjury and not mere conclusions or opinions. People v. Reed, 84 Ill. App. 3d 1030, 1040 (1980). The defendant must show, by clear and convincing evidence, the substance of his allegations of perjured testimony, and it is the province of the circuit court to determine

19

whether the defendant's evidence warrants a new trial.  People v. Burrows, 172 Ill. 2d 169, 180 (1996).

Defendant relies on People v. Hilliard, 65 Ill. App. 3d 642 (1978), *abrogated by* Brown, 169 Ill. 2d at 105-07, for the proposition that a criminal defendant's section 2-1401 petition seeking relief on the basis of recanted testimony should not be dismissed without a determination as to the truth or falsity of the recanting witness's affidavit.  Strangely, defendant also invokes an inapplicable standard of review under Coleman, 183 Ill. 2d at 387-88, asserting that the circuit court's dismissal of a petition for postconviction relief without an evidentiary hearing is subject to plenary review by this court.

We note that the decision in Hilliard has been abrogated by our supreme court in Brown, which clarified the standards for reviewing the dismissal of criminal section 2-1401 petitions in the exact scenario now before us.  We will therefore resolve defendant's argument concerning perjured and recanted testimony according to the superior authority.  Also, we must point out to defendant that his claims of perjured and recanted testimony were heard in an evidentiary hearing conducted pursuant to section 2-1401, not in a postconviction setting.  Accordingly, our standard of review is much more deferential to the circuit court's judgment.

In this case, defendant presented the hearsay testimony of Weathers and Selvie that Holmes had told them that she had perjured herself during defendant's trial.  Holmes testified in rebuttal and gave testimony that was consistent with her trial testimony and directly contradicted Weathers' and Selvies' allegations.  The testimony given by Renard Jackson at the evidentiary hearing recanting his earlier testimony at defendant's trial was, at its best, incoherent and did nothing to negate the trial testimony of the three other eyewitnesses to the murder.  We fail to

perceive the cumulative weight, if any, the circuit court neglected to assign this evidence in determining the merits of defendant's petition. The testimony defendant presented in his favor – that of Stogner, Weathers, Selvie, and Jackson – was far from clear and convincing, and we conclude that the trial court did not err in failing to assign it due weight.

Defendant lastly contends that the circuit court erroneously denied his petition for postconviction relief. He argues that the court misapplied the standard for applying the rule of Apprendi retroactively and should have found that his sentence was unconstitutional.

In Apprendi, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 147 L. Ed. 2d at 453, 120 S. Ct. at 2362-63. In the wake of the Supreme Court's issuance of that decision in 2000, this court received myriad appeals from inmates who claimed that their enhanced sentences were unconstitutional in that they had been imposed based on factors found applicable only by trial judges and not by juries. Many sought to have their sentences overturned retroactively. The Illinois Supreme Court ruled in People v. De La Paz, 204 Ill. 2d 426 (2003), that Apprendi was not to be applied to Illinois defendants on a retroactive basis where the direct appeals from their convictions and sentences had been exhausted before Apprendi was decided. De La Paz, 204 Ill. 2d at 433-37.

Here, defendant argued in his petition for postconviction relief and argues again on appeal that the circuit court's enhancement of his sentence to an extended term on the basis of its finding that the crime was exceptionally brutal and heinous and indicative of wanton cruelty violated Apprendi because the finding was not issued by the jury. He further argues that

21

Nos. 1-01-1447; 1-04-2466 (consolidated)

the circuit court's denial of his postconviction petition was erroneous in that <u>Apprendi</u> should apply retroactively in his case because his direct appeal was not perfected and no appellate court ever undertook a formal review of his sentence. He argues that this court's granting his appellate counsel leave to withdraw pursuant to <u>Anders</u> did not constitute an exhausted appeal and that fundamental fairness now dictates consideration of the constitutionality of his sentence.

From the record before us, it appears that the circuit court summarily dismissed defendant's postconviction petition. We review such judgments *de novo*. <u>People v. Barrow</u>, 195 Ill. 2d 506, 519 (2001).

We do not agree with defendant's contention that he never received a formal direct appeal. As noted above, this court granted defendant leave to file a late notice of appeal in 1996. His appellate counsel moved for leave to withdraw, stating that there were no meritorious issues to bring before the appellate court. Defendant responded to the motion, contending his innocence and that two of the State's witnesses had recanted their testimony. This court duly considered defendant's arguments, granted counsel's motion, and affirmed defendant's conviction. <u>People v. Thomas</u>, No. 1-93-4307 (1997) (unpublished order under Supreme Court Rule 23).

While we are aware that a defendant's failure to respond to his appellate counsel's <u>Anders</u> motion to withdraw and that a defendant's failure to include all grounds for relief in such a response do not result in waiver of all future claims (see <u>People v. Jones</u>, No. 1-01-3731, slip op. at 8 (June 9, 2005)), nevertheless, this court did review and affirm this defendant's conviction, if not his sentence, in 1997, three years before <u>Apprendi</u> was decided. We are not aware of any authority holding that a criminal defendant is entitled to multiple and separate direct appeals of

22

Nos. 1-01-1447; 1-04-2466 (consolidated)

his conviction and of his sentence, and defendant has not provided us with any to that effect.

Therefore, we find defendant's direct appeal had been exhausted prior to <u>Apprendi</u>'s issuance and that the circuit court was correct in refusing to apply <u>Apprendi</u> retroactively.

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

QUINN, P.J., and MURPHY, J., concur.