2022 IL App (1st) 210700-U

No. 1-21-0700

Order filed December 2, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 16803 |
| | ) | |
| KEVIN STANLEY, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's *sua sponte* denial of defendant's section 2-1401 petition for relief from judgment over his contention that he stated a cognizable claim that a witness committed perjury at trial on a material fact.

¶ 2    Defendant Kevin Stanley appeals from an order of the circuit court *sua sponte* denying his petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). On appeal, he contends the circuit court erred in denying his petition

because he alleged a witness committed perjury on a material fact and supported his claim with an affidavit from that witness. For the following reasons, we affirm.

¶ 3     Defendant and codefendant Ronald Henderson were charged with 14 counts of first degree murder arising out of the fatal shooting of nine-year-old Chastity Turner on June 24, 2009, and 10 counts of attempted first degree murder stemming from the non-fatal shootings of Chastity's father, Andre Turner, and another man, Joseph Walker, in the same incident. Following a 2014 jury trial, defendant was found guilty of one count of first degree murder and two counts of attempted first degree murder, and was sentenced to a total of 100 years in prison.[1] We set forth the facts of the case in defendant's direct appeal (*People v. Stanley*, 2016 IL App (1st) 142598-U), and we recite them here to the extent necessary to our disposition.

¶ 4     At trial, Turner testified that Chastity was his nine-year-old daughter. He grew up with defendant and had known him his entire life. He had known Henderson for around 10 years. Turner identified both defendant and Henderson in court. Turner and Henderson's brother, "Gargamel," were the leaders of a "set" of the Gangster Disciples (GD) gang. Several weeks prior to the shooting, Turner met with Gargamel to discuss a resolution regarding the drug business between their factions. Turner rejected an offer that Gargamel had made him, and Gargamel was noticeably upset. A day or two before the shooting, Henderson and Turner had an argument that resulted in a physical altercation.

---

[1] Defendant was tried in a joint jury trial with codefendant Henderson, who is not a party to this appeal. Henderson was also found guilty of (1) the first degree murder of Chastity; (2) the attempted first degree murder of Turner; and (3) the attempted first degree murder of Walker. *Stanley*, 2016 IL App (1st) 142598-U, ¶ 107.

¶ 5    On June 24, 2009, around 6:45 p.m., a large group of people, including Chastity and Turner's girlfriend Tawanda Sterling, were outside Turner's home on the 7400 block of South Stewart Avenue. Turner was standing in his driveway near the sidewalk talking with Joe Walker and Ricardo Foster when a van that he had never observed before drove onto his street.

¶ 6    As the van pulled up near Turner, the passenger side was facing him, and both the passenger-side sliding door and passenger window were open. Turner identified Henderson as the driver and defendant sitting in the front passenger seat. Turner heard over 10 shots fired, which did not all sound the same. He observed defendant leaning out the window, shooting a rifle with a wooden stock. Turner was struck by a bullet in his left bicep and ran toward the van as it drove away. He observed Davionne Whitfield, known as "Gucci," sliding the right-side passenger door closed but could not recall observing a firearm in Whitfield's hands. After the van left, Turner's friend drove him to the hospital because his arm was "gushing out blood." Police notified him that Chastity had died.

¶ 7    Turner identified a photograph of defendant and, in a lineup, identified defendant as the shooter. In another lineup, he identified Henderson as the driver of the van. Turner did not know whether Henderson had a gun in his hand during the incident.

¶ 8    Julius Davis testified that around 7 p.m. on the day of the shooting, he was on the 7400 block of South Stewart standing on the corner, opposite and down the street from Turner's residence. He noticed a crowd of people outside Turner's home and observed a van stop in front of the residence. The occupants of the vehicle began shooting toward the residence. Upon hearing shots, Davis yelled "on the van" to warn people to pay attention to the van. Davis did not know who was doing the shooting. He hid behind a tree for cover. There, Davis observed Henderson,

whom he had known for a while, inside the vehicle as it drove away. Henderson was holding a firearm and fired at Davis. Davis heard the bullets ricochet off the tree as he hid behind bushes. The incident lasted a few seconds. Once the vehicle drove away, Davis walked toward Turner's residence and observed Chastity lying on the ground.

¶ 9    Davis identified Henderson as the driver in a photographic array. He did not recall returning to the police station to view a physical lineup identifying Henderson but acknowledged his signature was on the lineup advisory form.

¶ 10    Donise Robertson testified that she was at Turner's residence with about 13 or 14 people present, including Chastity and Turner. Around 6:50 p.m., Robertson observed a teal green van traveling toward her on Stewart Avenue, with the passenger side of the vehicle facing her. She heard shots fired from the vehicle as it stopped in front of the home. Although she did not observe who was driving the vehicle, Robertson identified defendant in court as the shooter in the front passenger's seat because he was hanging out the window as he was shooting. Robertson had known defendant for many years before the shooting occurred, and her view of him was clear and unobstructed. Robertson also identified another shooter from the passenger side as "Gucci," one her son's friends who had been to her home multiple times.

¶ 11    Robertson informed officers on the scene that the shooters were "Kevo" and "Gucci." "Kevo" was defendant's nickname and "Gucci" was Whitfield's nickname.

¶ 12    Robertson identified Whitfield and defendant as the shooters in separate photo arrays. In a physical lineup, she identified Whitfield as the individual shooting from the back of the van. On June 26, 2009, Robertson gave a handwritten statement to an ASA. In another lineup, Robertson identified defendant as the shooter from the passenger side window.

¶ 13    Tawanda Sterling, Turner's girlfriend, testified to substantially the same version of events as Turner. She was at the bottom of the porch at the time of the shooting. Sterling heard Davis say "on that van" and then watched as the van stopped in front of the residence and shooters fired from both the front passenger and back passenger seats of the van. She identified Whitfield, who she knew as "Gucci Man," as the person firing from the back passenger's side door. She could not identify the shooter from the front passenger seat. Sterling identified the driver as Henderson but could not recall whether he had a gun in his hand.

¶ 14    In a lineup, Sterling identified Whitfield, whom she had known for approximately six years prior, as the shooter in the back passenger's side seat. In another lineup, she identified Henderson as the driver. The parties stipulated that in Sterling's handwritten statement and grand jury testimony she did not identify Henderson as the driver.

¶ 15    Joe Walker testified he was talking with Turner in the driveway near the sidewalk. Walker heard gunshots, but could not tell where they originated. He was struck in the back by a bullet. Walker was unable to identify anyone in the van.

¶ 16    Chicago police detective Timothy J. O'Brien testified that, in June 2009, there was an internal gang conflict amongst the GDs which caused "some splinter factions to break off." On the day of the shooting, O'Brien interviewed Robertson, who stated she had observed defendant carrying a silver firearm. The parties stipulated that, if called, Detective Brian Lutzow would testify that Robertson identified defendant as one of the shooters on June 25, 2009.

¶ 17    O'Brien's partner, Detective Michael O'Donnell, testified Turner identified defendant as the shooter in the front passenger seat in a lineup. Robertson separately identified defendant as a shooter in the same lineup. Davis identified Henderson in a photo array as "the driver of the van

that he saw point a gun and shoot at him while driving down the street." Davis later identified Henderson as the driver who shot at him in a physical lineup. Turner and Sterling also identified Henderson as the driver in separate lineups.

¶ 18    The jury found defendant guilty of (1) the first degree murder of Chastity; (2) the attempted first degree murder of Turner; and (3) the attempted first degree murder of Walker. The trial court sentenced defendant to 50 years for the murder of Chastity and 25 years each for the attempted murder of Walker and Turner, to be served consecutively for an aggregate sentence of 100 years in prison. This court affirmed defendant's convictions on direct appeal. *Stanley*, 2016 IL App (1st) 142598-U.

¶ 19    We also affirmed the summary dismissal of defendant's *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) over his contention that he made an arguable claim that trial counsel was ineffective for failing to investigate and call a witness who would testify the person getting out of the passenger side of the van was wearing a clown mask, thereby undermining Turner's and Robertson's identifications of defendant. *People v. Stanley*, 2020 IL App (1st) 181006-U.

¶ 20    On April 30, 2019, defendant filed the instant section 2-1401 petition for relief from judgment, alleging the State's unknowing use of perjured testimony, if known at the time of trial, would have changed the outcome and prevented judgment. Specifically, defendant contended Davis testified falsely that he saw Henderson driving the van "because he was ordered to do so" by Turner, when in fact the driver and front passenger had their faces covered. Thus, it "stands to reason" that Turner and Robertson "also lied about observing the face of the defendant and that he

was the shooter." Defendant contended that the evidence was closely balanced, and the State's case rested on Turner's and Robertson's identifications.

¶ 21     In support of his petition, defendant attached an affidavit from Davis, dated June 2018. In his affidavit, Davis averred that he went with Turner to the police station on July 4, 2009, and gave a statement against Henderson. Turner and "others" threatened him and told him to tell police and later testify that he saw Henderson driving the van "or else things would get ugly for [him]." However, Davis averred, he did not observe the driver's and passenger's faces because they were covered by "bandanas or something." Davis stated he was willing to testify to the truth to "make things right."

¶ 22     On June 28, 2019, the circuit court denied the petition, finding defendant failed to state allegations that would entitle him to relief under section 2-1401. Specifically, the court found that Davis' affidavit was not evidence of false testimony, but rather a recantation of a prior statement. The court concluded that Davis would have been impeached with his prior statement at trial and that the other trial evidence contradicted Davis' affidavit. Moreover, even if accepted as true, the court found Davis' affidavit did not exonerate defendant because Davis averred that he could not observe the faces of the driver or passenger, which did not exclude defendant as one of the offenders. Thus, the court determined Davis' affidavit did not establish a fact that would have prevented entry of defendant's conviction had it been known at the time of trial.

¶ 23     On June 16, 2021, defendant filed a *pro se* motion for leave to file late notice of appeal. This court denied defendant's motion for lack of jurisdiction but, pursuant to a supreme court supervisory order, vacated that order and allowed defendant's motion. Defendant filed his late notice of appeal on February 23, 2022.

¶ 24 On appeal, defendant contends the circuit court erroneously denied his section 2-1401 petition where he alleged that Davis committed perjury regarding a material fact and supported his claim with an affidavit from Davis.

¶ 25 Section 2-1401 of the Illinois Code of Civil Procedure provides a comprehensive statutory procedure that allows for a movant to petition for relief from a final order or judgment after 30 days following its entry. 735 ILCS 5/2-1401(a) (West 2018). Although a section 2-1401 petition provides a civil remedy, relief under this section also extends to criminal cases. *People v. Abdullah*, 2019 IL 123492, ¶ 13. A defendant in a criminal case may seek " 'to correct all errors of fact occurring in the prosecution of a case that were unknown to the petitioner and the court at the time of trial, which, if then known, would have prevented the judgment from being entered.' " *People v. Moore*, 2012 IL App (4th) 100939, ¶ 26 (quoting *People v. Thomas*, 364 Ill. App. 3d 91, 98 (2006)). We review the circuit court's dismissal of a section 2-1401 petition *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 26 As an initial matter, the parties disagree over whether we should affirm the circuit court's judgment because defendant filed his petition beyond the two-year limit set forth in section 2-1401. 735 ILCS 5/2-1401(c) (West 2018). Generally, a section 2-1401 petition may not be filed later than two years following the entry of the final order or judgment, unless a clear showing is made that the person seeking relief was under a legal disability or duress or the grounds for relief were fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2018); *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

¶ 27 Defendant argues the two-year statute of limitations was waived because he "made a clear showing that he could not file the petition within the required period because the grounds for relief

were fraudulently concealed" since he did not find out about Davis' "perjured trial testimony" until Davis signed his affidavit. Additionally, he contends that, even if his petition is considered untimely, the State forfeited the affirmative defense of timeliness by failing to file a responsive pleading in the circuit court. The State acknowledges that it did not raise the statute of limitations in the circuit court but contends this court may still affirm on that basis. We disagree with the State.

¶ 28    Timeliness under a statute of limitations is an affirmative defense that may be waived or forfeited by failing to raise the issue in the circuit court. *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 16 (citing *Pinkonsly*, 2017 Ill. 2d at 562-63). This court has previously found the State's forfeiture of a timeliness defense resulting from its failure to respond in the circuit court extends to appeal because, due to the State's failure to raise the issue, the defendant is unable to amend his petition to allege facts in support of an exception based on disability, duress, or fraudulent concealment. *People v. Oliver*, 2021 IL App (1st) 181605, ¶ 19. As the State acknowledges, it failed to file a responsive pleading in the circuit court and did not assert the statute of limitations defense. See *Oliver*, 2021 IL App (1st) 181605, ¶ 19. Moreover, the circuit court did not address the timeliness of defendant's petition or dismiss it on that ground, nor could it. See *Cathey*, 2019 IL App (1st) 153118, ¶ 18 ("[T]he trial court cannot *sua sponte* dismiss a section 2-1401 petition based on timeliness if that issue was never raised before the court."). We therefore decline the State's invitation to affirm the dismissal of defendant's petition on timeliness grounds. In any event, for the reasons set forth below, we find that defendant's petition fails to show a meritorious claim as required for relief under section 2-1401.

¶ 29    Defendant contends he set forth a meritorious claim that Davis' perjured testimony on a material fact warrants an evidentiary hearing. Specifically, he argues Davis' affidavit is critical because it renders Turner's and Robertson's identifications suspect and questionable. He argues that Davis' "false testimony was outcome-determinative" and he therefore was denied a fair trial. Defendant argues the circuit court should have held an evidentiary hearing on his petition to determine which of Davis' statements were false.

¶ 30    Section 2-1401 can provide a basis for relief from a judgment based on false testimony. *People v. Brown,* 169 Ill. 2d 94, 107 (1996); *People v. Burrows*, 172 Ill. 2d 169, 179-80 (1996). To obtain relief under section 2-1401, a defendant is required to show, by a preponderance of the evidence, (1) the existence of a meritorious claim, (2) due diligence in presenting it, and (3) due diligence in filing the petition. *Cathey*, 2019 IL App (1st) 153118, ¶ 23; *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007). A petition must be supported by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2018). A circuit court may dismiss a section 2-1401 petition *sua sponte* if the allegations, taken as true, do not entitle the party to relief as a matter of law. *Vincent*, 226 Ill. 2d at 13. Where the State fails to respond to the petition, this constitutes an admission of all well-pleaded facts. *Vincent*, 226 Ill. 2d at 9.

¶ 31    To be entitled to relief on the basis of perjured testimony, defendant was required to show by clear and convincing evidence that the testimony was not merely false but willfully and purposefully given, material to the issue tried and not merely cumulative, and that it probably controlled the determination. *People v. Sanchez*, 115 Ill. 2d 238, 286 (1986). Although a defendant does not have to establish that the false testimony was knowingly used by the State (*Brown*, 169

Ill. 2d at 107-08), he must present clear factual allegations of perjury rather than mere conclusions or opinions (*Thomas,* 364 Ill. App. 3d at 104). A defendant must show, by clear and convincing evidence, the "substance of his allegations of perjured testimony." *Thomas*, 364 Ill. App. 3d at 104 (citing *Burrows,* 172 Ill. 2d at 180). Where a defendant satisfies that burden, the circuit court must then determine whether this evidence warrants a new trial. *Thomas*, 364 Ill. App 3d at 104.

¶ 32    Even assuming defendant diligently presented his perjury claim, he has not shown by a preponderance of the evidence that his claim was meritorious. See *e.g.*, *Pinkonsly*, 2017 Ill. 2d at 565 (the defendant must establish each of the three elements under section 2-1401 to be afforded relief). Here, Davis' purportedly perjured testimony that Henderson was the driver did not "probably" control the outcome of defendant's trial. *Sanchez*, 115 Ill. 2d at 286. At trial, Davis testified that he observed a van stop in front of Turner's residence and witnessed the occupants begin shooting, but he did not know who was doing the shooting. He hid behind a tree and saw Henderson shoot at him from the vehicle as it drove away. This evidence, even if false, did not significantly contribute to defendant's conviction.

¶ 33    Rather, the essential testimony showing defendant was guilty was that of Turner and Robertson. Both had known defendant for several years at the time of the shooting and identified him as the shooter in the front seat on the passenger side of the vehicle. Robertson testified that her view of defendant was unobstructed, his face was uncovered, the passenger side of the van was facing her, and she saw defendant lean out of the window with his arm extended and fire a gun. Robertson informed the police that defendant was one of the shooters immediately after the shooting. She also identified him in a photo array, in a physical lineup, and again at trial. Turner did not initially cooperate with police, but later identified defendant in a lineup as one of the

shooters and testified at trial to a substantially similar version of events as Robertson—that defendant fired a gun while hanging out of the front passenger window of the van. In light of these identifications, we cannot say that Davis' allegedly perjured testimony about Henderson driving the van probably controlled the outcome of defendant's trial.

¶ 34    In reaching this conclusion, we reject defendant's assertion that Davis' averment that he falsely identified Henderson and did not actually observe the shooters' faces because they were covered undermined the reliability of Turner's and Robertson's identifications. Taking Davis' affidavit as true, his proposed testimony at most contradicts the identification testimony presented at trial. As previously detailed, both Robertson and Turner unequivocally identified defendant. While defendant appears to assume that Davis' purported testimony about the shooters' faces being covered would negate Turner's and Robertson's identifications, we note that, generally, a witness's recantation of prior testimony is viewed as inherently unreliable. See *People v. Jones,* 2012 IL App (1st) 093180, ¶ 63. As the circuit court pointed out, Davis would likely be impeached with his prior testimony identifying Henderson, and his credibility undermined, thus weakening his proposed testimony. Given the unreliability of recantation testimony and the substantial evidence showing defendant was one of the shooters, we find defendant failed to present a meritorious claim based on Davis' affidavit as required to obtain an evidentiary hearing under section 2-1401.

¶ 35    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.