SIXTH DIVISION
July 20, 2007

No. 1-05-1577

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| | ) | |
| | ) | No. 90 CR 11979. |
| v. | ) | |
| | ) | |
| TONY ANDERSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Defendant, Tony Anderson, appeals from the summary dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq (West 2002)). He contends that the circuit court erred in summarily dismissing his petition where he set forth the gist of meritorious claims that (1) his due process rights were violated when detectives at Area 2 violent crimes coerced him into giving a confession to offenses he did not commit; (2) he was provided ineffective assistance of counsel because counsel "coerced" him into pleading guilty and (3) the State violated his right to due process by failing to disclose the existence of voluminous claims of Area 2 police torture pursuant to Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

I. BACKGROUND

Defendant was indicted on over 100 charges in 13 different cases in Cook County,

stemming from offenses he committed in March and April 1990. Case No. 90 CR 11984 was tried to a judge; case No. 90 CR 11985 was tried to a jury; and defendant pleaded guilty to charges in 11 remaining cases. In case No. 90 CR 11979, the subject of this appeal, an eight-count indictment charged defendant with three counts of first degree murder, two counts of burglary, attempted armed robbery, attempted residential burglary, and attempted home invasion. Defendant pleaded guilty to two counts of first degree murder, and the State *nol prossed* the remaining counts. The court sentenced defendant to 50 years' imprisonment.

*Motion to Suppress Confession*

Prior to defendant's guilty pleas, William Heenan, defendant's original trial counsel, moved to suppress defendant's inculpatory statements, alleging that they were the product of police coercion.[1] At a pretrial hearing on that motion, the State called its own witnesses first. Detective Sellers testified that on April 18, 1990, he and his partner, Patrick Brosnan, arrested defendant for possession of a stolen automobile. Detective Sellers further testified that later that afternoon, around 6 p.m. he and his partner spoke with defendant at the auto theft section of the

---

[1]The motion to suppress appears to have encompassed all of defendant's charges in all 13 cases. The State avers that defendant's testimony and his claim that his inculpatory statements were the product of coercion were made with respect to only one of his indictments in case No. 90 CR 11984. The resolution to this factual dispute is not readily discernable from the face of the record. However, because, as shall be demonstrated, we resolve this case in favor of affirmance in either event, we shall consider the testimony introduced at the suppression hearing to apply across the board as urged by the defendant, appellant.

Chicago police department located at 1121 South State Street, in Chicago. Detective Sellers testified that prior to speaking with defendant, he advised defendant of his Miranda rights from a Fraternal Order of Police (F.O.P.) book and that defendant indicated that he understood each right. According to Detective Sellers, defendant did not request an attorney or indicate that he wished to remain silent.

Detective Sellers further testified that he then questioned defendant about the circumstances of his arrest. According to Detective Sellers, during the interview, defendant was seated and handcuffed to the wall together with another suspect, Robert Allen. Detective Sellers denied defendant's allegations that he used a police stick to strike defendant in the ribs and thighs or that he placed a gun in defendant's hand or that he put it to the side of his head. He also stated that neither he nor his partner used physical or psychological coercion to force defendant to speak.

On cross-examination, Detective Sellers stated that the interview lasted for approximately 1 hour and 15 minutes. He also stated that upon request defendant was given water and was allowed to use the restroom.

Detective Brosnan next testified that he was present at defendant's arrest early in the afternoon of April 18, 1990, but stated that he did not advise defendant of his constitutional rights at that point. Detective Brosnan stated that he next saw and then proceeded to question defendant in an interview room of the auto theft section of the Chicago police department at 1121 South State Street, in Chicago. Detective Brosnan acknowledged that before that interview, he observed Detective Sellers read defendant his Miranda rights from an F. O. P. book

3

and that defendant indicated that he understood those rights. Detective Brosnan also testified that defendant did not request an attorney. Detective Brosnan denied having struck defendant with a billy club, using a gun, or making any verbal threats against defendant. He further denied having seen any other officers participate in any such coercion.

On cross-examination, Detective Brosnan conceded that when defendant was read his individual rights from the F.O.P. book, on many occasions, he merely nodded to show that he understood. Detective Brosnan also testified that after responding to questions about the stolen vehicle he had been driving when arrested, defendant indicated that he wished to remain silent. Detective Brosnan indicated that he could not state with certainty when this occurred, but believed it was "while defendant was being read some of his constitutional rights," about 20 to 25 minutes after Detective Brosnan arrived at the station to interview him. Detective Brosnan also stated that he did not recall if defendant asked for a telephone call but upon further questioning conceded that "he may have" done so.

Detective Brosnan next described the interview room as being about 14 by 19 feet and explained that, during questioning, Allen and defendant were handcuffed to the wall in the same handcuff ring. Detective Brosnan acknowledged that defendant was in the room for about two to three hours and that he was not given food. According to Detective Brosnan, defendant was periodically unhandcuffed so that he could drink water from a water fountain located next to the wall ring.

Detective Michael McDermott testified that about 9 p.m., on April 18, 1990, together with Detective Gallagher, he picked up defendant from the auto theft section at 1121 South State

4

Street and brought him to an interview room at Area 2 violent crimes located at 111th Street in Chicago. Detective McDermott testified that officers at the State Street police station did not tell him that defendant had invoked his right to remain silent. Rather, they told him that defendant was "eager to talk."

Detective McDermott stated that once at Area 2, at about midnight, he advised defendant of his Miranda rights from an F.O.P. book, which defendant indicated he understood. Detective McDermott then proceeded to interview defendant in increments totaling about four to five hours. The detective acknowledged that defendant was in the interview room the entire night and that the last conversation he had with him was on August 19, 1990, at 4 p.m. The detective described the interview room as being "eight by ten foot, [with] beige walls *** [a] bench, a table, chairs," and a "three by-three foot plaque on the wall with ... Miranda warnings in English and in Spanish." According to Detective McDermott, during the interview, defendant was not handcuffed, was given snacks, and water, and was allowed to use the washroom. Detective McDermott also testified that Detective Gallagher from Area 2, and Detectives Maslanka and Paladino from Area 3, participated in parts of the interview. Detective McDermott finally stated that even though he was armed with a .38 revolver that night, he never threatened defendant with the gun or used a police stick to jab him.

Detective John Gallagher next testified that around midnight on April 18, 1990, together with Detective McDermott, he picked up defendant from the auto theft police station at 1121 South State Street and brought him to an interview room at Area 2 headquarters. Detective Gallagher testified that he witnessed Detective McDermott advise defendant of his Miranda

rights from his F.O.P. book and that defendant indicated that he understood those rights. Detective Gallagher also stated that during this interview no one struck defendant, poked him with a billy club, put a gun to his head or threatened him in any way.

Detective Maslanka testified that on April 19, 1990, he was assigned to Area 3 violent crimes and proceeded to Area 2 violent crimes headquarters in order to conduct lineups and several investigations pertaining to a homicide relevant to Area 3. Detective Maslanka testified that around 4:10 p.m., he met defendant in an interview room at Area 2 violent crimes with his partner John Paladino. He advised defendant of his Miranda rights from an F.O.P. handbook, and defendant indicated that he understood. According to Detective Maslanka, defendant did not request an attorney and did not ask to make a telephone call. Detective Maslanka also stated that no one advised him that defendant had previously indicated that he did not wish to speak. The detective then proceeded to question defendant.

Detective Maslanka denied placing a gun to defendant's head, striking him with a police stick, coercing him physically or psychologically, or seeing any other officer threaten defendant in any manner. Detective Maslanka also stated that although he was armed with a Smith and Wesson 9 millimeter gun and his partner had a revolver, during the interview, neither of them removed the weapons from their holsters.

Detective Paladino testified that on August 19, 1990, he was assigned to Area 3 violent crimes when he received a telephone call from Area 2 indicating that one of the subjects in custody had "some knowledge of a homicide that occurred at Area 3." Detective Paladino stated that he proceed to Area 2 with his partner, Detective Maslanka. He averred that after Detective

Maslanka read defendant his Miranda rights, defendant indicated he understood them, did not request an attorney and did not indicate that he wished to remain silent. The officers then proceeded to interview defendant. According to Detective Paladino, during this interview, no one put a gun to defendant's head, and no one struck him with a billy club.

After the State presented its witnesses, defendant took the stand on his own behalf. Defendant testified that while he was at the auto theft division, he was not threatened or hit by any police officers, but he testified that once at Area 2 headquarters at 111th Street, he was coerced into making incriminatory statements relating to numerous crimes. Defendant stated that at Area 2, he was placed in a room that was about 10 by 7 feet, with no windows, and that he was questioned by numerous police officers throughout the night. Defendant averred that after Detective Gallagher left the room, Detective McDermott placed a gun to his head and threatened that he would "blow [his] damn brains out" if he did not confess. Defendant also averred that Detective Maslanka jabbed him in the chest, rib, and back with his night stick. Although he could not say exactly how many times he was jabbed, defendant estimated it was "over 12 times," because he was crying in pain. Defendant acknowledged that he was given a physical examination prior to his admission to the county jail, but that no bruises were present at that time.

Defendant further alleged that he was not permitted to use the bathroom at either the State Street or 111th Street police stations and that the first time he used a bathroom was when he was transferred to the county jail. Defendant also stated that during the interview, he made seven requests for permission to make a telephone call, but was denied each time. Defendant also

7

testified that no one ever advised him of his Miranda rights and that there was no plaque on the wall of the interview room indicating them.

At the close of the hearing, the court denied defendant's motion to suppress his incriminating statements, finding that they were given "freely and voluntarily without coercion or threat or compulsion of any kind." In doing so, the court found that based on the totality of evidence, defendant "was advised of his rights numerous times" and was "not in anyway threatened or abused." The court also noted that "the evidence we choose to accept *** [is] the testimony of the police officers indicating that he was at no time abused or physically threatened."

*Guilty Pleas*

In August 1991, defendant's newly retained counsel, Thomas Hoffa, failed to appear in court for three consecutive days, and the trial court issued a bench warrant for his arrest. On August 7, 1991, the assistant State's Attorney informed the trial court that she had spoken to an investigator who visited Hoffa's apartment, and that he reported that Hoffa had "a gash in the side of his head, ***bruises and swelling to his face, that he was intoxicated, that he was disoriented and that he was unable to move or walk." All of this information was relayed to defendant and the court advised him that "It would be this Court's opinion [], and it is just my opinion, that Mr. Hoffa is not now nor will he be in the near future in a position to represent you in this case." Defendant nevertheless opted to continue with Hoffa as his counsel.

On August 9, 1991, Hoffa finally appeared in court, and represented defendant as he pleaded guilty to first degree murder (in case No. 90 CR 11979), two counts of attempted first

8

degree murder (in case Nos. 90 CR 11983, 90 CR 11986), seven counts of armed robbery (in case Nos. 90 CR 11780, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991, and 90 C 660648), and one count of attempted escape (in case No. 90 CR 11982). Following the submission of factual bases for each charge, the court admonished defendant regarding the potential sentences for each offense, and he acknowledged that he understood what rights he was surrendering. With regard to case No. 90 CR 11979, the State proffered that the evidence would show that on March 30, 1990, defendant fired two shots from a .25-caliber handgun, striking the victim, Leonard Cox, in the left chest and causing his death. Eyewitnesses would identify defendant in open court and testify that they had identified him in a lineup shortly after the shooting. The evidence would further show that the same .25-caliber handgun used in the incident was found in defendant's possession upon his arrest. Furthermore, defendant's statement confessing involvement in this incident would be introduced. Following this proffer, defendant pleaded guilty to first degree murder, the trial court accepted his plea and sentenced him to 50 years' imprisonment.

On November 1, 1991, defendant moved to vacate his guilty pleas, in each of the foregoing cases, arguing that he did not understand the plea agreement, the nature of the charges, or that the potential sentences could run consecutively. Defendant also argued that his attorney had "coerced" him into pleading guilty by telling him that if he did not do so, he would likely get the death penalty. On December 17, 1991, the circuit court *sua sponte* indicated that it would treat defendant's motion as a postconviction petition because it was untimely as it was filed 30 days after defendant had entered his pleas of guilty. The court then went on to dismiss

9

defendant's postconviction petition, finding that his claims were "spurious and without basis in law and fact." In doing so, the court noted that defendant had been advised "as to each and every case the possible penalties, the nature of the charges, the factual basis for each case," and "at no time indicated any hesitation."

Defendant appealed the circuit court's dismissal of his petition arguing that it was improperly dismissed without an evidentiary hearing more than 30 days after its filing. The State confessed error. On May 4, 1992, we remanded the cause solely for appointment of counsel and a hearing to determine whether the allegations in defendant's petition were frivolous. On remand, the circuit court ruled that the claims raised in defendant's petition could have been raised on direct appeal and were thus frivolous and patently without merit. At this time, the court also denied defense counsel's request for a continuance to enable him to interview witnesses about defendant's allegations that counsel coerced him into pleading guilty. Defendant filed a motion to reconsider this ruling, and the court denied it.[2]

On April 28, 2000, defendant filed a single *pro se* postconviction petition encompassing case Nos. 90 CR 11979, 90 CR 11980, 90 CR 11982, 90 CR 11983, 90 CR 11986, 90 CR 11987,

---

[2]At a hearing on this motion, the public defender representing defendant appeared and explained that he did not realize that, at the time of the previous hearing, defendant had already retained private counsel, and thus now moved to withdraw. Private counsel had indeed filed an appearance, but did not appear at the previous hearing because she was unaware of its date. The court ruled that private counsel could proceed with an appeal of the dismissal of the petition, but held that the dismissal would stand. Defendant did not appeal the dismissal.

90 CR 11988, 90 CR 11990, 90 CR 11991 and 90 CR 60648, in which he alleged that he was deprived of effective assistance of counsel when counsel "coerced" him to plead guilty through repeated statements that if he proceeded to trial, he would receive the death penalty. Defendant also argued that counsel was ineffective for failing to file any motions, and for appearing drunk in court on the day of his guilty pleas. On May 16, 2000, the circuit court dismissed defendant's second petition as untimely and frivolous. In doing so, the court noted that the trial court had issued a bench warrant for defense counsel Hoffa and that defendant was made aware that when located by an investigator, counsel appeared to be intoxicated. Defendant, however, persisted that Hoffa remain his lawyer, rejecting all offers of representation by the public defender. The court thus held that petitioner "intelligently waived his chance to have a different lawyer represent him" and that the resolution his counsel reached for him was "fair and just and reasonable." On March 19, 2002, we upheld the dismissal of defendant's petition, noting that defendant's claims of ineffective assistance of counsel were barred by the doctrine of *res judicata* because "even though they were couched in terms of ineffective assistance of counsel, they [were] identical in substance to such claims raised [and rejected] in defendant's original petition." People v. Anderson, No. 1-00-2338 (2002) (unpublished order pursuant to Supreme Court Rule 23).

On December 9, 2004, defendant filed the instant "Petition for Leave to File a Successive Petition for Post-Conviction Relief" only with regard to case No. 90 CR 11979. In this petition, defendant alleged that his plea was made as a result of police coercion, and that he made his incriminating statement at Area 2 violent crimes as a result of torture inflicted by Area 2 and

11

Area 3 detectives. Defendant specifically identified Detectives McDermott and Maslanka as having coerced a confession from him. According to the petition, Detective McDermott held a gun to defendant's head and threatened to "blow [his] brains out" if he did not sign a confession. Detective Maslanka then repeatedly jabbed defendant with his nightstick in the back and chest. Defendant stated that as a result of these tactics, he made a statement implicating him in various crimes, including the murder of Leonard Cox to which he pleaded guilty.

In his petition, defendant also contended that counsel "coerced" him into pleading guilty to the crimes to which he confessed. Defendant further argued that in violation of Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), the State failed to disclose to him that Detectives Maslanka and McDermott had been accused of torture by other defendants and that there were numerous instances of similar police abuse at Area 2 and Area 3 under the command of Jon Burge.

On January 4, 2005, the circuit court dismissed the instant petition without a written order. On February 16, 2005,[3] the circuit court denied defendant's motion to reconsider the denial of his motion for leave to file a successive postconviction petition. In doing so, the court noted:

"The voluntariness of [defendant's] confession was adjudicated, handled pre-trial or pre-plea. His same allegations have been raised in various fashions in

_____

[3] We note that while the Certified Report of Disposition indicates that the circuit court denied defendant's motion on February 16, 2005, the Report of Proceedings shows that the denial occurred on February 15, 2005.

prior petitions.

He is talking about things that have [been] adjudicated through the post-conviction proceedings as well as in a pre-trial motion, and I think he's waived. This was [a] negotiated plea.

I find this petition to be without merit. Motion to reconsider, as he puts it, dismissal of his sessive [*sic*] post-conviction petition denied."

## II. ANALYSIS

### 1. Violation of Due Process Because of Coerced Confession

Defendant first contends that the court erred in summarily dismissing his postconviction petition because "all [his] allegations taken as true" stated the gist of a meritorious claim that his rights to due process were violated when the police used coercion to extract an oral confession from him, which later served as a basis for his guilty pleas and subsequent convictions for murder, attempted murder, armed robbery and attempted escape.

The State initially notes that, unlike defendant's first and second post-conviction petitions, defendant's current petition only encompasses case No. 90 CR 11979 and, thus, does not challenge his guilty pleas for attempted murder (case Nos. 90 CR 11983, 90 CR 11986), armed robbery (case Nos. 90 CR 11780, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991, 90 C 660648) or attempted escape (case No. 90 CR 11982). The notice of appeal in this case refers only to case No. 90 CR 11979, and defendant provides us with no notice of appeal for the other cases. It is an incontrovertible rule that a reviewing court has no jurisdiction over an appeal absent a properly filed notice of appeal (see Niccum v. Botti,

13

No. 1-05-1577

Marinaccio, DeSalvo & Tameling, Ltd., 182 Ill. 2d 6, 7, 694 N.E.2d 562, 563 (1998) ("filing a notice of appeal is the jurisdictional step which initiates appellate review"); Childers v. Kruse, 297 Ill. App. 3d 70, 73, 696 N.E 2d 1253, 1255 (1998) ("[a] timely notice of appeal is both jurisdictional and mandatory")), and we are obliged to dismiss an appeal if we lack jurisdiction, even if no party to the appeal has raised the issue (see Shanklin v. Hutzler, 277 Ill. App. 3d 94, 99, 660 N.E.2d 103, 106 (1995)). As such, we find that the only case that is properly before us on appeal is case No. 90 CR 11979 and therefore must reject defendant's attempt to extend our review beyond the limits of our jurisdiction.

Moreover, even if we could consider these cases, we have long held that allegations not raised in the postconviction petition cannot be considered on appeal. See People v. Smith, 352 Ill. App. 3d 1095, 1112, 817 N.E.2d 982, 998 (2004); People v. Griffin, 321 Ill. App. 3d 425, 428, 748 N.E.2d 1235, 1238 (2001) (the Act does not permit a defendant to raise an issue on appeal from the dismissal of a postconviction petition that he never raised in the petition)). Therefore, we find that, in the present case, defendant is limited to challenging his guilty plea solely in case No. 90 CR 11979, involving a plea of guilty for first degree murder of the victim, Leonard Cox.

The State next responds that defendant's claim of coercion is barred by the doctrines of waiver and *res judicata*. We agree. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2004)) provides a means by which a defendant may challenge his conviction for substantial "violations of federal or state constitutional rights." People v. Tenner, 175 Ill. 2d 372, 377, 677 N.E.2d 859, 862 (1997). At the first stage of postconviction proceedings, the

14

circuit court must determine whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2004); People v. Boclair, 202 Ill. 2d 89, 99, 789 N.E.2d 734, 740 (2002). In order to avoid dismissal at this stage, defendant need only present the gist of a meritorious constitutional claim. People v. Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). Defendant need only present a limited amount of detail and all well-pleaded allegations in his petition must be taken as true and liberally construed. People v. Edwards, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). We review the circuit court's summary dismissal *de novo*. People v. Coleman, 183 Ill. 2d 366, 387-88, 701 N.E.2d 1063, 1075 (1998).

Because an action seeking postconviction relief is a collateral proceeding, not an appeal from the underlying judgment, the Act contemplates the filing of only one postconviction petition. People v. Evans, 186 Ill. 2d 83, 89, 708 N.E.2d 1158, 1161 (1999). Consequently, all issues actually decided on direct appeal or in the original postconviction petition are barred by the doctrine of *res judicata*, and all issues that could have been raised in the original proceeding, or original postconviction petition, but were not, are waived. People v. Blair, 215 Ill. 2d 427, 443, 831 N.E.2d 604, 615 (2005). Where *res judicata* and waiver preclude defendant from obtaining relief, such a claim will necessarily be frivolous and patently without merit. Blair, 215 Ill. 2d at 445, 831 N.E.2d at 615.

In the present case, we find that defendant's claim of police coercion is waived because defendant could have raised it in his original and second postconviction petitions. Defendant's affidavit attached as part of his successive postconviction petition states that Detectives McDermott and Maslanka coerced him into signing a confession. In that affidavit, defendant

15

specifically avers that after he was arrested, he was never read his rights, that he requested an attorney but was not provided one, and that, instead, the two police officers "beat and threatened [him] with a gun into making the coerced confessions." We note that defendant made the exact same allegations in his testimony at a pre-trial hearing on his motion to suppress his statements in 1991, and the trial court found that his confession was not coerced. Defendant was thus aware of the coercion at the time that it allegedly took place in 1990, and at the time he entered his guilty pleas in 1991. However, after the denial of his motion to suppress, defendant chose to abandon these allegations and did not address them in his motion to vacate his guilty pleas, on direct appeal, or in his second postconviction petition. Instead, defendant waited 13 years, until December 2004, to raise them in this, his third successive postconviction petition. As we find that defendant could have brought this claim earlier, his failure to do so results in the forfeiture of this claim. See Blair, 215 Ill. 2d at 445, 831 N.E.2d at 615; 725 ILCS 5/122-3 (West 2004).

Furthermore, we find that defendant's claim of coercion is waived because a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones. See People v. Townsell, 209 Ill. 2d 543, 545, 809 N.E.2d 103, 104 (2004); People v. Peeples, 155 Ill. 2d 422, 491, 616 N.E.2d 294, 326 (1993) (issues waived by a plea of guilty include the admissibility of defendant's confession). The record indicates that the circuit court found on at least three occasions that defendant's guilty plea was entered voluntarily (first, at the time of defendant's plea, second, in denying defendant's motion to vacate his plea, and third, when denying defendant's second postconviction petition). As defendant's plea was entered voluntarily, he has waived his right to raise this issue here. Defendant nevertheless contends that

his guilty plea was not voluntarily entered because his counsel "coerced" him into pleading guilty, and that he has not waived the issue of coercion for purposes of this appeal. We disagree and address this contention below with regard to defendant's claim of ineffective assistance of counsel.

With regard to the argument that he forfeited his right to address this issue by not raising it in an earlier postconviction proceeding, defendant nevertheless argues that his petition is not procedurally barred because the sources relied on by him now constitute "newly discovered evidence," which corroborate his claim that his confession was coerced and involuntary. In support of his contention defendant relies on (1) a body of federal and state cases indicating a pattern of practice of torture at Area 2 and Area 3; (2) the report of the Chicago Police Department's Office of Professional Standards (OPS); (3) his own affidavit; (4) a copy of a party's response to a motion to bar the depositions of Mayor Richard M. Daley and other officials in the case of Patterson v. Burge, No. 03-C-4433 (Cir. Ct. Cook Co.) (Patterson pleading); and (5) the report of the special State's attorney's investigation into allegations of torture ordered by the Circuit Court of Cook County on April 24, 2002, which was completed in July 2006 (Report of the Special State's Attorney).

For the reasons that follow, we find defendant's contention without merit. We first note that in the context of a successive postconviction petition, the rule of waiver is not merely a principle of judicial administration, but rather an express requirement of the statute. See People v. Pitsonbarger, 205 Ill. 2d 444, 458, 793 N.E.2d 609, 620-21 (2002); 725 ILCS 5/122-3 (West 2002)) ("[a]ny claim of substantial denial of constitutional rights not raised in the original or

amended petition is waived"); People v. Smith, 341 Ill. App. 3d 530, 539, 794 N.E.2d 367, 377

(2003) (because there is less interest in providing a forum for the vindication of defendant's

constitutional rights in a successive proceeding, "waiver, which would be a procedural

affirmative defense for purposes of the first petition, becomes a substantive consideration going

to the merits of a successive postconviction petition").  As such, waiver is generally fatal to a

successive postconviction petition, like the one before us today.  However, our court has held

that the statutory bar to a successive postconviction petition may be relaxed where "fundamental

fairness so requires." People v. Morgan, 212 Ill. 2d 148, 153, 817 N.E.2d 524, 527 (2004).  In

order to show that "fundamental fairness" requires that defendant be allowed to file a successive

postconviction petition, defendant must demonstrate both cause and prejudice with respect to

each claim. Morgan, 212 Ill. 2d at 153-54, 817 N.E.2d at 527.  To establish cause, defendant

must identify an objective factor that impeded his ability to raise a specific claim during his

initial postconviction proceedings. Morgan, 212 Ill. 2d at 153-54, 817 N.E.2d at 527.  To

establish prejudice, defendant must demonstrate that the error not raised in his initial

postconviction proceedings so infected the trial that the resulting conviction violated due

process. Morgan, 212 Ill. 2d at 154, 817 N.E.2d at 527.

We initially note that defendant does not attempt to demonstrate cause and prejudice with

regard to this particular claim.  Instead, he relies upon People v. Cannon, 293 Ill. App. 3d 634,

640, 688 N.E.2d 693, 696 (1997), for the proposition that "new evidence" and "special

circumstances" warrant the relaxation of the procedural bars of waiver and *res judicata*.  We find

defendant's reliance on Cannon misplaced.  In that case, a criminal defendant was allowed to

relitigate the issue of a coerced confession after 16 other arrestees filed complaints in the OPS alleging torture by police detectives, and we set forth two exceptions to the general rule that bars relitigation of a decided motion to suppress evidence: new evidence that would have been pertinent to the trial court's rulings, and "special circumstances" that would warrant relitigation of the motion. Cannon, 293 Ill. App. 3d at 640, 688 N.E.2d at 696. However, defendant here specifically states that "he does not request relitigation of his initial motion to suppress as did the defendant in Cannon," but merely asks us to apply the standard in Cannon to allow his successive postconviction petition to proceed to the second stage of review. Our supreme court clearly articulated in Pitsonbarger that the sole "analytical tool" that is to be used to determine whether fundamental fairness requires an exception to the statutory procedural bar of waiver to a successive postconviction petition is the cause-and-prejudice test. Pitsonbarger, 205 Ill. 2d at 459, 793 N.E.2d at 621. Our legislature has recently adopted the cause-and-prejudice test as defined in Pitsonbarger as a separate procedural hurdle that defendant must overcome before filing a successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2004) ("Only one petition may be field by a petitioner under this [a]rticle without leave of the court. Leave of court may be granted only if a petitioner demonstrated cause for his or her failure to bring the claim in his or her initial post[]conviction proceedings and prejudice results from that failure"). We note that while the cause-and-prejudice test and the "special circumstances" test may at least in part overlap, the Cannon test is reserved for relitigating motions to suppress, which were denied during the pendency of an actual trial. However, because in the case at bar, we are dealing with a successive postconviction petition, the appropriate test is the cause-and-prejudice test, and we

19

will proceed with our analysis using that test, even though defendant does not identify it as such.

We next note that defendant has failed to satisfy the "cause" prong of the test because he has failed to point to an objective factor that impeded him from raising a claim of coercion in an earlier proceeding. Defendant originally gives no reason for not raising his claim earlier, and only later, in his reply brief, he attempts to circumvent the cause prong by simply stating that "this objective factor is consistently identified as the newly discovered nature of the evidence [defendant] relies on." However, arguments raised for the first time in a reply brief on appeal are considered waived. Smith, 352 Ill. App. 3d at 1112, 817 N.E.2d at 998, citing People v. Brown, 169 Ill. 2d 94, 108, 660 N.E.2d 964, 970 (1995). Moreover, even if we were not to consider defendant's argument waived, his conclusory statement provides no plausible "cause" for his failure to obtain the evidence earlier. See People v. Mahaffey, 194 Ill. 2d 154, 185, 742 N.E.2d 251, 268 (2000), citing People v. Franklin, 167 Ill. 2d 1, 15, 656 N.E.2d 750, 758 (1995). Evidence of systematic torture was already widely available in 2000 when defendant filed his second post-conviction petition. Most of the cases that defendant cites to in his postconviction petition were decided between 1987 and 2000. See, e.g., People v. Wilson, 116 Ill. 2d 29, 506 N.E.2d 571 (1987); People v. Banks, 192 Ill. App. 3d 986, 549 N.E.2d 766 (1989); Wilson v. City of Chicago, 6 F.3d 1233 (7th Cir. 1993); United States ex rel. Maxwell v. Gilmore, 37 F. Supp. 2d 1078 (N.D. Ill. 1999). Similarly, the OPS report[4] to which defendant cites in his

_____

[4]The OPS investigation began in 1989, following internal investigation of police misconduct at Area 2. "The first section of the OPS report is known as the Goldston report. It documents the allegations of 50 different suspects concerning misconduct by Area 2 personnel

current petition was completed on September 28, 1990, ten years before defendant filed his second postconviction petition. See Orange, 195 Ill. 2d at 445, 749 N.E.2d at 937. Similarly, defendant's affidavit, attached to his current successive post-conviction petition, does not provide any new evidence, as the allegations of coercion are exactly the same as those he raised in his motion to suppress his statements in 1991. Thus, defendant has not shown cause for not raising this issue in an earlier proceeding. See Orange, 195 Ill. 2d at 445, 749 N.E.2d at 937.

We recognize, however, that a copy of a party's response to a motion to bar the depositions of Mayor Richard M. Daley and other officials in the case of Patterson v. Burge, No. 03-C-4433 (Cir. Ct. Cook Co.) (the Patterson pleading) on which defendant relies as newly

_____

from 1973 to 1986. The allegations included 27 incidents of beatings, 13 incidents where a plastic bag or typewriter cover was placed over a suspect's head, 11 incidents where a firearm was used to threaten or strike a suspect, 9 incidents of electroshock, and 2 hanging incidents. The report concluded that Area 2 police, [headed by commanding officer Jon Burge], engaged in systematic abuse of suspects during the 13-year period, which included planned torture." People v. Orange, 195 Ill. 2d 437, 445-46, 749 N.E.2d 932, 937 (2001). The second section of the OPS report is the Sanders report, which is an analysis of the Andrew Wilson case. That report found that "Burge [himself] actively participated in the 'mistreatment' of Wilson, burned Wilson with a radiator, repeatedly shocked him, and 'engaged [him] in several unjustified physical altercations during which Mr. Wilson was handcuffed and incapable of providing any resistance.'" People v. Patterson, 192 Ill. 2d 93, 141, 735 N.E.2d 616, 643 (2000).

21

discovered evidence became available only after he filed his second postconviction petition in 2000. This document is dated September 24, 2004, and presumably filed by Aaron Patterson in his section 1983 (42 U.S.C. §1983 (2000)) case against former Area 2 commander Jon Burge. However, even though defendant objectively could not have obtained this documents before filing his second postconviction petition, we find there was ample evidence of police torture available to him in 2000 that would have allowed him to raise a claim of police coercion at that time. Moreover, defendant points to no objective reason that would explain why he could not raise this claim without this additional piece of evidence, and we therefore find that he has failed to show cause.

However, even if the unavailability of the Patterson pleading is sufficient to establish cause for failing to raise his claim earlier, defendant cannot establish that he suffered any prejudice in connection with his claim of coercion because this piece of allegedly "newly discovered evidence" does not satisfy the standard for granting a new trial. See Orange, 195 Ill. 2d at 450, 749 N.E.2d at 940. "For new evidence to warrant a new trial, the evidence (1) must be of such conclusive character that it will probably change the result on retrial; (2) must be material to the issue, not merely cumulative; and (3) must have been discovered since trial and be of such character that the defendant in the exercise of due diligence could not have discovered it earlier." Orange, 195 Ill. 2d at 450-51, 749 N.E.2d at 940, citing People v. Molstad, 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402 (1984).

In light of the overwhelming evidence of defendant's guilt proffered by the State at defendant's plea hearing, there is no probability that the Patterson pleading would change the

result of defendant's proceeding on retrial. As the factual basis for defendant's guilty plea, the State proffered that the evidence would show that on March 30, 1990, defendant fired two shots from a .25-caliber handgun, killing the victim, and that the same .25-caliber handgun used in the incident was found in defendant's possession upon his arrest. The State also proffered that eyewitnesses to the incident would identify defendant in open court and testify about the incident. The same eyewitnesses would testify that they had already picked defendant out of a lineup. In light of this evidence, there is no reasonable probability that, if defendant's confession were excluded, he would not have pleaded guilty, and instead would have been found not guilty of the murder charged.

Moreover, because we have previously recognized that documents prepared in anticipation of litigation "generally lack the earmarks of trustworthiness and reliability" (People v. Smith, 141 Ill. 2d 40, 73, 565 N.E.2d 900, 914 (1990)), we find that the Patterson answer is unreliable. This document is merely a pleading that details allegations of the City of Chicago withholding documents pertaining to 14 electric shock cases discovered by the OPS report in 1984.

In addition, a review of the Patterson pleading reveals that it contains no information that would support defendant's allegations that Detectives Maslanka and McDermott jabbed him with a billy club and threatened him with a gun. Neither officer is mentioned in that pleading, and the allegations there involve the use of electric shock which differ from the coercive tactics which defendant claims were deployed by Detectives Maslanka and McDermott to coerce his confession. Generalized claims of misconduct, without any link to defendant's case, *i.e.,* some

23

evidence corroborating defendant's allegations, or some similarity between the type of misconduct alleged by defendant and that presented by the evidence of other cases of abuse, are insufficient to support a claim of coercion. See People v. Maxwell, 173 Ill. 2d 102, 120-21, 670 N.E.2d 679, 687 (1996) (holding that without some evidence that defendant was injured, evidence of the treatment of other suspects, through reports of physical abuse and coercion of confessions at Area 2, could not, by itself, be the basis for a postconviction evidentiary hearing); People v. Hinton, 302 Ill. App. 3d 614, 626, 706 N.E.2d 1017, 1022-23 (1998) (rejecting defendant's contention that he was entitled to an evidentiary hearing on his postconviction petition because he had new evidence which showed "systematic torture" at Area 2, specifically an affidavit from an Illinois attorney, OPS reports, findings from the Chicago police board, and his own affidavit asserting that he was beaten, pistol-whipped, shocked and suffocated, because defendant did not present sufficient evidence of *his own* injury); People v. Hobley, 159 Ill. 2d 272, 311-12, 637 N.E.2d 992,1009-10 (1994) (holding it was not error for trial court to bar testimony of three witnesses who claimed they had also been abused by the same officer who abused defendant because there was no evidence that the defendant had sustained injuries consistent with his claim of police brutality); People v. Hobley, 182 Ill. 2d 404, 448-49, 696 N.E.2d 313, 335-36 (1998) (Hobley II) (denying postconviction petitioner's request to proceed to an evidentiary hearing, holding that "new evidence" consisting of the OPS report and transcripts of testimony from other alleged victims of abuse did not alter the court's determination that defendant did not suffer injuries consistent with his claims of abuse); People v. Murray, 254 Ill. App. 3d 538, 553, 626 N.E.2d 1140, 1150 (1993) (holding that defendant's allegations of abuse

24

of other suspects were properly excluded because they were "general in nature"); Mahaffey v. Schomig, 294 F.3d 907, 917 (7th Cir. 2002) (noting that defendant's failure to produce any corroborating eyewitness testimony, medical records or supporting evidence dealing with the injuries he alleges he sustained while in custody significantly undermined his involuntary confession claim).[5]

We further find that defendant cannot in this appeal rely on the Report of the Special State's Attorney for evidence of coercion in his case. Although we granted defendant's request to cite to that report as additional authority, we find that it would be wrong for us to consider that report for the first time on appeal without it first being attached to defendant's postconviction petition for initial scrutiny and evaluation at the trial court level. See 725 ILCS 5/122-2 (West 2002) ("[a postconviction] petition *shall have* attached thereto affidavits, records, or other evidence, *supporting its allegations* (emphasis added)"); People v. Collins, 202 Ill. 2d 59, 66-69, 782 N.E.2d 195, 199-200 (2002) (holding that postconviction petitioner cannot be excused from the *pleading* requirements of section 122-2); People v. Turner, 187 Ill. 2d 406, 414, 719 N.E.2d 725, 730 (1999) (holding that failure to attach the necessary affidavits, records or other evidence or explain its absence is "fatal" to a post-conviction petition); Coleman, 183 Ill. 2d at 380, 701 N.E.2d at 1071, quoting People v. Jennings, 411 Ill. 21, 102 N.E.2d 824 (1952) (holding that

---

[5]We further note that even if we were to hold that the factual allegations in the Patterson pleading constitute evidence of systematic misconduct at Area 2, the evidence is, at best, cumulative of previous evidence of Area 2 tactics and therefore not "new." See Orange, 195 Ill. 2d 450-51, 749 N.E.2d at 940.

No. 1-05-1577

failure to attach the necessary documentation by itself justifies the petition's summary dismissal); People v. Jefferson, 345 Ill. App. 3d 60, 71, 801 N.E.2d 552, 560 (2003) (holding that, at the first stage of post-conviction proceedings, "'[t]he circuit court is required to make an independent assessment *** as to whether *the allegations in the petition,* liberally construed and taken as true, set forth a constitutional claim for relief.' (Emphasis added) [Citation.] Issues that are raised for the first time on appeal are by definition not 'allegations in the petition'"); People v. Montgomery, 327 Ill. App. 3d 180, 186, 763 N.E.2d 369, 375 (2001) (holding that affidavit attached on appeal but not as part of defendant's postconviction petition as required by the Act is stricken because "appellate review is generally limited to what has been properly presented and preserved of record in the trial court").[6]  Although the Report of the Special State's Attorney did

---

[6]In an earlier appeal from a denial of a different postconviction petition filed by the same defendant with respect to another conviction (case No. 90 CR 11984), we did consider, with the apparent acquiescence of both parties, the impact of the Report of the Special State's Attorney, without it first having been filed in the trial court.  See People v. Tony Anderson, No. 1-05-1379 (2006) (unpublished order under Supreme Court Rule 23).  In that decision, we found that under the facts of that case coupled, among other things, with the explicit refusal of the Report of the Special State's Attorney to support defendant's contentions with respect to any of his convictions, that defendant did not sufficiently cross the threshold of cause and prejudice for his petition to proceed to the second stage of postconviction proceedings.  See People v. Tony Anderson, No. 1-05-1379 (2006) (unpublished order under Supreme Court Rule 23).  However, we recognize in this decision that the better practice would have been not to have considered that

26

not materialize until after the circuit court had already ruled on defendant's postconviction petition,[7] we note that neither by statute nor case law is there any limit to the number of successive postconviction petitions that can be filed with the trial court, so as to enable that court to first consider any allegedly newly discovered evidence before it is submitted for appellate review.

Likewise, the same applies to defendant's argument raised for the first time on appeal that "several other cases have [recently] emerged" which show Detectives Maslanka's and McDermott's involvement in allegations of abuse at Area 2.[8]  Because defendant never cited to

report in any event for the first time on appeal without it first having been presented to the trial court, for the reasons heretofore indicated.

[7]The Report of the Special State's Attorney was completed pursuant to a court order of the chief judge of the circuit court criminal division entered on April 24, 2002, and released in July 2006, six years after defendant filed his second postconviction petition, and after defendant filed the reply brief in the current cause.

[8]See People v. Coleman, 206 Ill. 2d 261, 272-73, 278, 794 N.E.2d 275, 283-84, 286-87 (2002) (listing several torture complaints lodged against Detective Maslanka); People v. Brown, 169 Ill. 2d 132, 145-46, 661 N.E.2d 287, 293-94 (1996) (although defendant alleged that Detectives Maslanka and Paladino were among the Area 3 detectives who ignored his request to speak to an attorney and "struck him repeatedly on the chest, hands and legs until he agreed to make a statement," court held that there was ample support for the trial court's finding that defendant's will was not overborne when he made his inculpatory statements); People v. Clemon,

these cases in his present successive postconviction petition, and as already discussed above, he cannot introduce them as new evidence for the first time on appeal. See 725 ILCS 5/122-2 (West 2002) ("[a postconviction] petition *shall have* attached thereto affidavits, records, or other evidence, *supporting its allegations* (emphasis added)); People v. Collins, 202 Ill. 2d 59, 68-69, 782 N.E.2d 195, 199-200 (2002) (holding that postconviction petitioner cannot be excused from the *pleading* requirements of section 122-2); People v. Jefferson, 345 Ill. App. 3d 60, 71, 801 N.E.2d 552, 560 (2003) (holding that, at the first stage of post-conviction proceedings, "'[t]he circuit court is required to make an independent assessment *** as to whether *the allegations in the petition,* liberally construed and taken as true, set forth a constitutional claim for relief.' (Emphasis added) [Citation.] Issues that are raised for the first time on appeal are by definition not 'allegations in the petition'").

Defendant may well contend that even without considering the Report of the Special State's Attorney, this case is similar to Patterson, 192 Ill. 2d 93, 735 N.E.2d 616, and People v. King, 192 Ill. 2d 189, 735 N.E.2d 569 (2000), cases holding that defendants were entitled to evidentiary hearings based on allegations of newly discovered evidence of police abuse at Area

259 Ill. App. 3d 5, 11, 630 N.E.2d 1120, 1121 (1994) (defendant alleged Detective Maslanka was one of the officers who coerced a confession from him in September 1991, and court held that "[a]lthough a [10 ½ - hour] detention generally is not considered unreasonable in itself, when, as here, the detention is combined with periodic screaming through the night, it supports defendant's theory of a coercive environment").

No. 1-05-1577

2. We find these cases inapposite. We first note that both <u>King</u> and <u>Patterson</u> involved newly discovered evidence presented in a *first* post-conviction petition and not one raised in a successive post-conviction petition. More importantly, both <u>King</u> and <u>Patterson</u> continue to require a defendant to show some similarity between his allegations of coercion and the generalized evidence of police torture at Area 2. See <u>Patterson</u>, 192 Ill. 2d at 118, 73 N.E.2d at 631.

In addition, although in <u>Patterson</u> the court specifically addressed whether the OPS report was "newly discovered evidence" entitling defendant to an evidentiary hearing to evaluate the credibility of defendant's allegations of police abuse, and found that the report was material to defendant's claim of coercion because it could change the outcome of defendant's proceedings on retrial (<u>Patterson</u>, 192 Ill. 2d at 145, 73 N.E.2d at 645), the evidence used to convict defendant in that case consisted solely of the testimony of the arresting officer and the State's Attorney regarding the substance of defendant's confession (see <u>Patterson</u>, 192 Ill. 2d at 104-106, 73 N.E.2d at 624-25). Unlike in <u>Patterson</u>, defendant here pleaded guilty to the offense in question, and the State's proffer at defendant's plea hearing indicated that eyewitnesses would identify defendant in open court as the perpetrator and testify that they had already identified him in a lineup shortly after the shooting, and that evidence would show that the same .25-caliber handgun used in the incident was found in defendant's possession upon his arrest.

Furthermore, unlike here, the <u>Patterson</u> court found that defendant's allegations that Jon Burge threatened him with a revolver were "strikingly similar" to allegations of systematic torture found in the Goldston report, which indicated that "a firearm was [often] used to threaten

29

or strike the victim" and that Burge was identified as participating in "51% of the cases." See

Patterson, 192 Ill. 2d at 144-45, 73 N.E.2d at 643, 645 (the question of relevancy "is a

determination to be made by the trial court after a consideration of, *inter alia*, the defendant's

allegations of torture and their similarity to the prior allegations"). In the present case, as already

discussed above Detectives Maslanka and McDermott are nowhere mentioned in the Patterson

pleading, and the allegations of torture in that pleading are different from defendant's allegations

here.

Similarly, in King, the court followed the rationale in Patterson and allowed defendant to

proceed to an evidentiary hearing, where defendant alleged that Burge was present during his

interrogation, and cited to the OPS report and the decision by the Chicago police board

dismissing Burge from his employment as a Chicago police officer as newly discovered

evidence. See King, 192 Ill. 2d at 198-99, 735 N.E.2d at 575-76. Unlike King, where the

defendant's inculpatory statements "supplied the primary evidence of his guilt" (People v. King,

109 Ill. 2d 514, 521, 488 N.E.2d 949, 953 (1986) (defendant's direct appeal)), as noted above, in

the case at bar, in light of the overwhelming evidence proffered by the State at defendant's plea

hearing, there is no likelihood that, had additional evidence of brutality allegations come to light,

preventing the introduction of defendant's inculpatory statements, he would have proceeded to

trial and been acquitted.

2. Ineffective Assistance of Counsel for "Coercing" Defendant to Plead Guilty

Defendant next contends that the trial court erred when it summarily dismissed his

petition because he stated the gist of a claim of ineffective assistance of counsel in violation of

30

No. 1-05-1577

his sixth and fourteenth amendment rights (U.S. Const., amends. VI, XIV), where counsel deprived him of his right to due process by "coercing" him to plead guilty. Claims of ineffective assistance of counsel are analyzed under the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), and People v. Bloomingburg, 346 Ill. App. 3d 308, 316-17, 804 N.E.2d 638, 645 (2004), which require defendant to show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. Failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. People v. Palmer, 162 Ill. 2d 465, 475-76, 643 N.E.2d 797, 801 (1994). We review the decision of the circuit court *de novo*. Coleman, 183 Ill. 2d at 387-88, 701 N.E.2d at 1075.

Defendant asserts that counsel "coerced" him into pleading guilty because he continually told defendant that he "would be put to death if [he] took the case to trial" and because he failed to investigate defendant's claims that his confession was coerced. The State argues that defendant's claim is barred by the doctrine of *res judicata*. We agree.

Defendant raised the same exact allegations in both his original and second postconviction petitions, where he alleged that he was deprived of effective assistance of counsel when counsel "coerced" him to plead guilty through repeated statements that if he proceeded to trial, he would receive the death penalty. Each time, the court found defendant's allegations without merit. As this claim has been raised and rejected by the circuit court twice, we find that defendant is barred by the doctrine of *res judicata* from relitigating it here. Blair, 215 Ill. 2d at

31

No. 1-05-1577

443, 831 N.E.2d at 615.

However, even if we were to relax this procedural bar, and consider the merits of defendant's claim, we would find that he cannot state the gist of a meritorious claim of ineffective assistance of counsel, because his assertion that his guilty plea was made involuntarily as a result of counsel's "coercion" is directly refuted by the record below. See People v. Greer, 212 Ill. 2d 192, 211, 817 N.E.2d 511, 523 (2004); People v. Jones, 144 Ill.2d 242, 263, 579 N.E.2d 829, 838 (1991).

The record reflects that at the August 9, 1991, plea hearing, counsel informed the court that pursuant to the July 26, 1991 and July 30, 1991 conferences, defendant wished to change his pleas to guilty. The following colloquy regarding case no. 90 CR 11979 then took place:

> "THE COURT: Next is 90-11979 which states that on or about March 30 of 1990 at and within the County of Cook, you, Tony Anderson, committed the offense of first degree murder in that you without lawful justification intentionally and knowingly shot and killed Leonard Cox with a gun. To that count of that indictment do you wish to enter a plea?
>
> MR. ANDERSON: Yes. Guilty
>
>                                                 \*\*\*
>
> THE COURT: Before I accept your pleas of guilty in these various matters I want to advise you of your rights and attempt to determine if you understand them.
>
> I have read the various counts of these various indictments and/or

32

informations to you. Do you understand them?

MR. ANDERSON: Yes.

THE COURT: Do you understand that on a plea of guilty to these counts of these indictments you could be sentenced as follows: As to the charge of first degree murder the possible penalties are not less than twenty nor more than sixty years in the Illinois Department of Corrections or under certain circumstances an extended term of not less than sixty nor more than one hundred years in the Illinois Department of Corrections. *As to the - State, this is not a possible - That was not a possible death penalty?* (Emphasis added)

[THE STATE]: *No, Your Honor.*

THE COURT: Okay, All right." (Emphasis Added).

The record further reflects that the court explained to defendant what jury and bench trials are and what he would be giving up by waiving his right to either or both. The court further advised defendant that by entering a guilty plea, he would be giving up other rights, including his right to remain silent, his right to confront the witnesses against him, his right to cross-examine them, his right to present evidence on his own behalf, his right to object to unreasonable searches and seizures and his right to object to identification testimony. Defendant acknowledged these admonishments and signed a jury waiver form in open court before the judge.

The record also shows that the court further reminded defendant that there had been "some *** very lengthy discussions" between defense counsel, the assistant State's Attorney and the court, concerning the facts of the case, and defendant's background. After these discussions,

the State had indicated that if defendant chose to plead guilty, it would recommend a sentence of 50 years. Defendant indicated that he understood. The court finally asked defendant if anybody had threatened him in any way, made him any other promises, or forced him to plead guilty, and defendant responded in the negative.

Thus, the record itself refutes defendant's contention that he was "coerced" into pleading guilty when counsel told him that he would otherwise receive the death sentence. The State made it clear during plea negotiations that "this was not a possible death penalty," and defendant acknowledged that he understood. Moreover, when asked if he was threatened into entering a guilty plea, defendant stated "No." Therefore, we find that the record demonstrates that defendant's postconviction allegation of ineffective assistance of counsel is frivolous on its face and patently without merit. See Jones, 144 Ill. 2d at 263, 579 N.E.2d at 838 (defendant's acknowledgment in open court, at a plea proceeding, that there were no agreements or promises regarding his sentence served to contradict his postconviction petition assertion that he pleaded guilty in reliance upon an alleged, undisclosed promise by defense counsel regarding sentencing); People v. Rissley, 206 Ill. 2d 403, 454, 795 N.E.2d 174, 202 (2003) (defendant's allegations were "totally contradicted by the record of the plea"); People v. Maury, 287 Ill. App. 3d 77, 83, 678 N.E.2d 30, 34 (1997) (defendant's declaration in his postconviction petition that his plea was involuntarily entered based on the erroneous advice of trial counsel was directly refuted by the record, which indicated that defendant answered "no" when the circuit court inquired whether any extraneous promises had been made to him).

We next consider defendant's assertion that counsel "coerced" him to plead guilty by

failing to investigate his allegations of police coercion. We first note that, as already discussed above, a claim of ineffective assistance of counsel is barred, if defendant fails to demonstrate cause and prejudice or actual innocence for not raising it in his earlier postconviction petitions. Morgan, 212 Ill. 2d at 153, 817 N.E.2d at 527. In the present case, defendant has not made a showing of either cause or prejudice. Defendant merely asserts that the objective reason for his failure to raise this claim earlier is the "newly discovered nature of the evidence that he cites, attaches and relies upon in his petition." As noted above, we have already found that this information was not "newly discovered evidence" at the time defendant filed his second postconviction petition in 2000.

However, even if we were to relax the rule of waiver and consider purely the merits of defendant's claim that counsel was ineffective for failing to investigate his claims of coercion, we would find that he cannot state the gist of a meritorious claim of ineffective assistance of counsel, because counsel's failure to investigate defendant's claim of police misconduct did not fail to meet reasonable professional standards. The right to effective assistance refers to competent and not perfect representation (People v. Odle, 151 Ill. 2d 168, 173, 601 N.E.2d 732, 735 (1992)), and mistakes in judgment will not, of themselves, render the representation incompetent (Palmer, 162 Ill. 2d at 476, 643 N.E.2d at 801-02). We accord a heavy measure of deference to counsel's decision regarding whether to investigate allegations of abuse (see People v. Deloney, 341 Ill. App. 3d 621, 636, 793 N.E.2d 189, 201 (2003), citing Orange, 168 Ill. 2d at 149, 659 N.E.2d at 940-41), and counsel only has a duty to make "reasonable investigations or to make a reasonable decision which makes particular investigations unnecessary" (see Orange, 168

35

No. 1-05-1577

Ill. 2d at 149, 659 N.E.2d at 940, citing People v. Harris, 129 Ill. 2d 123, 158, 544 N.E.2d 357, 372 (1989)).  Where the circumstances known to counsel at the time of investigation do not reveal a sound basis for inquiry into a certain issue, it is not ineffective for counsel to forgo further inquiry.  Hinton, 302 Ill. App. 3d at 619-24, 706 N.E.2d 1021-24 (holding that defendant had not established there was a sound basis for further inquiry where there was no evidence of injury other than defendant's testimony and his allegation that counsel failed to introduce his bloody shirt); Orange, 168 Ill. 2d at 150, 659 N.E.2d at 940-41 (not ineffective to forgo inquiry where the only evidence supporting defendant's allegation of abuse was his testimony and a questionable entry on a paramedic's report).

In the present case, defendant's initial defense counsel filed a motion to suppress defendant's inculpatory statements and a hearing was held.  Defendant himself admitted at the hearing on that motion that he was given a physical examination after his interrogation and that this examination revealed no bruises or physical injuries corroborating his allegations of abuse.  Moreover, there was no witness to the alleged brutality.

In addition, at the time defendant entered his guilty pleas, the only evidence to support defendant's allegation of coercion were generalized claims of torture at Area 2.  Because, as noted above, generalized allegations of coercive activity in Area 2, without other corroborative evidence, would not establish that this defendant was coerced into confessing, we find that it was not unreasonable for plea hearing counsel to curtail his investigation after the motion to suppress was denied.  See People v. Titone, 151 Ill. 2d 19, 30, 600 N E.2d 1160, 1165 (1992) (our supreme court affirmed the circuit court's dismissal of defendant's postconviction petition

36

alleging bribery between defense counsel and the trial judge because an investigation into the judge's conduct in unrelated cases was not germane to defendant's claim); People v. Zambrano, 266 Ill. App. 3d 856, 864, 640 N.E.2d 1334, 1340 (1994) (in affirming the dismissal of defendant's postconviction petition alleging ineffective assistance of counsel, this court found that the fact that defendant's attorney was being investigated for improprieties in non-related cases was insufficient to taint other cases counsel had worked on); Hinton, 302 Ill. App. 3d at 625, 706 N.E.2d at 1024 (court held that it was not reasonably probable that a motion to suppress defendant's statement would have been granted had trial counsel investigated further, because there were no medical reports to bolster defendant's claim of abuse, nor any photographs of injuries or supporting witness testimony). Obviously, the competency of counsel cannot be measured in hindsight by matters which may have come to light after he was called upon to act, but must be viewed under the circumstances present at the time his action, or for that matter, inaction, took place.

Finally, we concluded earlier in this opinion that in light of the overwhelming evidence proffered by the State at defendant's plea hearing, it is not likely that, had additional evidence of brutality allegations come to light and prevented the introduction of defendant's confession, defendant would have proceeded to trial and been acquitted. Accordingly, we cannot find here that the outcome of defendant's proceedings would have been different, but for counsel's failure to obtain the same information, under the second prong of Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

### 3. Brady Violation

37

Defendant next contends that his petition states the gist of a meritorious claim under Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), because the State violated his due process right by failing to disclose, prior to his guilty plea, exculpatory evidence of voluminous claims of Area 2 police torture "echoing" defendant's claims of coercion. Defendant specifically alleges that the State withheld evidence that Detectives McDermott and Maslanka committed misconduct at Area 2, and that Assistant State's Attorney Kip Owen, who litigated defendant's suppression hearing, had knowledge of this evidence at the time of defendant's plea hearing. Defendant specifically alleges that Owen "was intimately acquainted with Area 2 for the relevant time period, worked in felony review when many claims of Area 2 torture were filed and even participated in the questioning in the Patterson case." We disagree.

Illinois courts have long recognized that a criminal defendant's right to due process and a fair trial is violated by the prosecution's failure to disclose material evidence favorable to the defense and that such claims are cognizable in postconviction proceedings. People v. Harris, 206 Ill. 2d 1, 44, 794 N.E.2d 314, 341 (2002); Hobley II, 182 Ill. 2d at 429-32, 696 N.E.2d at 326-32. To establish a Brady violation, defendant must show that the suppressed evidence was both material and favorable to his defense. Evidence is material if there is a reasonable probability that the result of defendant's trial would have been different had the prosecution disclosed the evidence. People v. Thomas, 364 Ill. App. 3d 91, 101, 845 N.E.2d 842, 852-53 (2006). A reasonable probability of a differing result is one sufficient to undermine confidence in the actual outcome. Thomas, 364, Ill. App 3d at 101, 845 N.E.2d at 852-53. Accordingly, to succeed on a claimed Brady violation, a defendant must demonstrate that (1) the undisclosed evidence is

favorable to him because it is either exculpatory or impeaching, (2) the evidence was either willfully or inadvertently withheld by the State, and (3) withholding the evidence resulted in prejudice to him. People v. Rapp, 343 Ill. App. 3d 414, 418, 797 N.E.2d 738, 741 (2003).

The State first argues that the disclosure requirement of Brady applies only to a trial and not to a plea hearing, and cites to cases from the Eight, Fifth, and Ninth Circuits which have held that a guilty plea waives a Brady violation claim. Defendant responds that the Second, Sixth and Tenth Circuits allow a defendant to proceed with a Brady claim despite the entry of a guilty plea. We note both that our courts have not addressed this issue and that the United States Supreme Court has yet to answer whether the due process clause requires Brady disclosures outside of the context of trial. However, for purposes of this appeal, we find that we need not decide this issue because defendant has waived his Brady claim by failing to raise it in his original and second postconviction petitions. As detailed above, the exhibits submitted in support of defendant's claim were discoverable prior to his filing his second postconviction petition in 2000. Moreover, even assuming that the State did possess such evidence of misconduct at Area 2 at the time of defendant's plea hearing, and that defendant could not have discovered it at the time he filed his original postconviction petition, defendant cannot meet the Brady materiality test because, as discussed above, there is no reasonable probability that, had such evidence of systematic torture at Area 2 been disclosed to the defense, the result of defendant's proceedings would have been different.

CONCLUSION

For the foregoing reasons, we find that defendant's postconviction petition was properly dismissed for failing to state any meritorious claims. Accordingly, we affirm the order of the

39

No. 1-05-1577

circuit court of Cook County.

_____AFFIRMED.

_____
_____FITZGERALD SMITH, P. J., and McNULTY, J., concur.