# Illinois Official Reports

## Appellate Court

---

### *People v. English*, 2014 IL App (1st) 102732-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY ENGLISH, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2732 |
| Filed | June 18, 2014 |
| Rehearing denied | July 24, 2014 |
| Modified upon<br>denial of rehearing | July 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was properly denied leave to file a successive postconviction petition alleging his actual innocence based on the claim that the State's three inculpatory witnesses recanted their trial testimony and claimed that the inculpatory testimony was the result of police abuse, since the allegations of defendant's petition were not sufficiently specific to meet the procedural requirements of a successive petition alleging actual innocence, the evidence defendant proposed to present did not qualify as newly discovered evidence for purposes of the Post-Conviction Hearing Act, and there was no evidence corroborating defendant's claims of police misconduct. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 96-CR-11509; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Robert Hirschhorn, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha Marie Kelly, and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Pucinski and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    On mandate from the supreme court following its opinion in *People v. Edwards*, 2012 IL 111711, the supreme court directed us to vacate our earlier judgment in *People v. English*, 2012 IL App (1st) 102732-U, and reconsider whether Anthony English should have been granted leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). *People v. English*, No. 115421 (Ill. Mar. 27, 2013). English claims the trial court improperly denied him leave because he pled a colorable claim of actual innocence by alleging that the State's three inculpatory witnesses, all of whom recanted their trial testimony, were the victims of police coercion.

¶ 2    In our earlier decision we affirmed the trial court's denial of English's request for leave to file a successive petition under the Act. English sought to relax the bar against successive postconviction petitions on the basis of actual innocence, claiming that newly discovered evidence supported his claim that the State's witnesses accused him because of police coercion. English offered two dated newspaper articles discussing Detective Daniel McWeeny's role in the investigation of torture in Area 2 by former Commander Jon Burge, as well as two affidavits that are years old from previously known witnesses. English also argued the trial court lost the statutory power to dismiss his petition because it allowed the 90-day time limitation to expire without action. *People v. English*, 2012 IL App (1st) 102732-U, ¶ 1.

¶ 3    We have considered the parties' supplemental briefs, and after reconsidering the matter in light of the supreme court's remand order, we hold the trial court did not err in denying English leave to file a successive petition. Although we agree that the trial court improperly considered the results of the evidentiary hearing in the postconviction proceeding on a separate murder conviction to deny English leave to file a successive petition in this case, a different result is not warranted based on that error. From review of the successive petition and the supporting documentation, as a matter of law, we must conclude that English could not set forth a colorable claim of actual innocence. The affidavits of the State's witnesses were not "newly

discovered" evidence as required under the Act. The trial court properly denied English leave to file a successive petition.

¶ 4                                    BACKGROUND

¶ 5                                         Trial

¶ 6        Both English and the victim, Bertram "Black" Scarver, were high-ranking members of the New Breed street gang. The shooting was witnessed by fellow gang members Jerry Lawrence, Dwight Sanders, and Joshua Cole. English's arrest came several months later after police connected English to the murder of rival gang member Keith Lewis, whose death resulted from the same gun, in the same area, a month before Black's murder. *People v. English*, No. 1-97-4521 (1999) (unpublished order under Supreme Court Rule 23) (following jury trial, English found guilty of first-degree murder of Lewis and sentenced to natural life in prison).

¶ 7        Because the shootings of Black and Lewis involved the same gun, Detective Daniel McWeeny investigated both incidents. During the investigation, McWeeny received a tip from Joshua Cole on English's whereabouts, which led to English's arrest.

¶ 8        Lawrence, Sanders, and Cole testified on the State's behalf at English's trial for the murder of Black. But all three witnesses were treated as hostile because Lawrence disavowed portions of his statement to the police and Cole and Sanders disavowed portions of their grand jury testimony. The State impeached the witnesses with their previous accounts. Lawrence's statement and Cole's and Sanders' grand jury testimony were introduced as substantive evidence. The State also questioned the witnesses about their earlier statements that they were afraid to testify against English.

¶ 9        At trial, Cole, then 16 years old, denied making a statement to the grand jury that English and another gang member instructed him to get Black to exit a store onto the street "so they could kill him." Cole testified he refused their request, and all he saw English do was speak with Sanders near the entrance of the grocery store and then shake Black's hand when he emerged. Cole denied telling the grand jury he told Detective McWeeny that English warned him not to speak with the police or that English shot Black.

¶ 10       The State showed Cole pictures he had previously identified as English and Black. Before the grand jury, Cole testified he viewed a lineup and identified English as the shooter; at trial, he denied the earlier identification.

¶ 11       Jerry Lawrence testified that he was with Sanders on the evening of the shooting in an apartment next to the grocery store. When Sanders left, Lawrence heard gunshots. Lawrence looked outside and saw Black in a pool of blood. He testified he saw a man firing a gun at Black but could not identify him.

¶ 12       Lawrence denied telling Detective McWeeny later that evening that English was the shooter. He further denied telling the prosecutor that he saw English shoot Black. Lawrence's earlier testimony identifying English as the shooter, including his written statement, was presented. Lawrence testified he told the officers he could not identify the shooter, but that Detective McWeeny pressured him into implicating someone and that he ultimately picked "the one that the detectives wanted [him] to pick" when shown a photographic array. Lawrence denied telling the prosecutors that gang members had come to him several times to threaten him about testifying.

¶ 13    During cross-examination, Lawrence testified he believed he accused English wrongly or had been forced to do so. He said that the police harassed him and he had been "roughed up" by detectives accompanying McWeeny when they first came to his apartment.

¶ 14    Dwight Sanders denied knowing Cole, Lawrence, or English. He denied seeing English shoot Black. Sanders acknowledged viewing a lineup but denied he identified English as the shooter. The State elicited his grand jury testimony–that when Black came out of the store, English shot him–which he repudiated.

¶ 15    Sanders claimed that in advance of testifying before the grand jury, an unidentified police officer hit him on the hands with a flashlight, pushed him back into his chair and told him to stop lying. He denied telling prosecutors the week before trial that an officer had hit his hands with a big stick.

¶ 16    At trial, Lawrence and Sanders offered a number of reasons for the inconsistencies between their trial testimony and earlier statements, including: tiredness, not paying attention, drug use, pressure by police, a desire to get the police or prosecutors "off their backs," indifference, and impatience. Sanders acknowledged that he did not tell the grand jury he had been mistreated by the police. Lawrence admitted that he told two prosecutors that he feared for his safety and that of his family if he testified against English.

¶ 17                                        Procedural History

¶ 18    Following a bench trial, English was found guilty of first-degree murder for the 1995 shooting of Black. The court sentenced English to 40 years in prison. On direct appeal, this court affirmed his conviction and sentence. *People v. English*, No. 1-97-2322 (1998) (unpublished order under Supreme Court Rule 23).

¶ 19    Thereafter, English filed his initial *pro se* petition for postconviction relief, alleging (i) ineffective appellate counsel for failing to raise issues counsel informed him were outside the record; and (ii) ineffective trial counsel for failing to interview witnesses English claimed would have exonerated him. English named three potential witnesses in his petition, but did not include their requisite affidavits. English also claimed trial counsel incorrectly advised him that he would avoid the death penalty if he waived his right to a jury trial. The trial court dismissed the petition, finding it failed to state the "gist" of a meritorious constitutional claim. On appeal, this court reversed, finding English's claim that his trial counsel misadvised him about the consequences of waiving his right to a jury trial stated the "gist" of a claim of ineffective assistance of trial counsel. We remanded for second-stage proceedings. *People v. English*, No. 1-00-2001 (2002) (unpublished order under Supreme Court Rule 23).

¶ 20    Appointed counsel, Dennis Urban, filed a supplemental petition refining English's claim regarding jury waiver in his *pro se* petition. Urban did not raise any other claims. Urban also represented English in the postconviction proceedings related to the Lewis murder conviction. The trial court dismissed the original and supplemental petitions, finding no merit to English's claim that trial counsel misled him about the consequences of his jury waiver. English appealed, arguing he did not receive effective assistance on remand because his appointed counsel failed to raise additional constitutional claims. This court affirmed the trial court's dismissal of English's postconviction petition. *People v. English*, No. 1-05-2288 (2007) (unpublished order under Supreme Court Rule 23).

Following a jury trial, English was found guilty of first-degree murder and sentenced to natural life in prison for the death of Keith Lewis. Keith Dickerson was among three people with Lewis at the time of the murder. Dickerson had known English for years and they had been friends before joining rival gangs. Dickerson identified English as the person who beat and then shot Lewis several times in the gang-related incident. *People v. English*, No. 1-97-4521 (1999) (unpublished order under Supreme Court Rule 23).

English filed a direct appeal regarding the Lewis murder conviction, claiming the State failed to prove him guilty beyond a reasonable doubt and the trial court abused its discretion in denying his request for a continuance to locate eyewitness William Brown. This court affirmed the judgment on appeal, noting that two eyewitnesses testified they saw defendant shoot Lewis in broad daylight and at close range and that proposed eyewitness Brown claimed that he did not see who fired the gun. *People v. English*, No. 1-97-4521 (1999) (unpublished order under Supreme Court Rule 23).

In February 2001, English filed a *pro se* postconviction petition regarding the Lewis murder conviction, alleging that intended defense witness Brown's testimony would have contradicted the State's witnesses. (Brown could not be located at the time of trial.) As support, English attached an affidavit from Brown that at the time of the shooting, Cole and Lewis were fighting and Brown and English were fighting. Brown claimed that when he heard gunshots, he was struggling with English, who "never showed or fired a gun." English also raised discrepancies in the testimony of the State's witnesses, Keith Dickerson and Joshua Cole. English contended Cole identified him as the shooter in both cases due to threats from the police and prosecutors that he would be charged with Lewis's murder if he did not implicate English. English attached Cole's affidavit to the petition. The trial court dismissed the petition after second-stage proceedings.

On appeal, English claimed the trial court erred in dismissing his petition without first holding an evidentiary hearing on his claim of actual innocence based on newly discovered evidence. Specifically, English argued Brown's affidavit showed he could not have shot Lewis. This court reversed the dismissal of defendant's postconviction petition and remanded for a third-stage evidentiary hearing, finding English made a substantial showing of a violation of his constitutional rights. We held the information in Brown's affidavit, when taken as true, "is potentially exculpatory and calls into question the credibility of the State's witnesses." *People v. English*, No. 1-05-2287 (2007) (unpublished order under Supreme Court Rule 23).

On remand, Brown and Cole testified at the evidentiary hearing. The trial court found both of them "wholly lacking in credibility." The court concluded "[t]he performances they put on here in [this] courtroom [were] sad and not at all compelling." The court noted that, since the time of English's trial, both Brown and Cole had "picked up quite a bit of additional baggage in [that] they're both now convicted murderers themselves." The trial court dismissed English's petition. We affirmed. *People v. English*, 406 Ill. App. 3d 943, 948-51 (2010).

Successive Postconviction Petition at Issue

On May 4, 2010, English filed the successive postconviction petition at issue. English alleged actual innocence based on newly discovered evidence regarding his conviction for Black's murder. Noting that the State's witnesses recanted their trial accusations, English

alleged that newly discovered evidence supported the witnesses' claims that their accusations were false by showing that the evidence against him was obtained through police misconduct and coercion of the witnesses. The evidence included a copy of Cole's 10-year-old affidavit and Brown's 5-year-old affidavit from English's postconviction proceeding in the Lewis murder and two newspaper articles naming Detective McWeeny as one of the police officers granted immunity in the investigation of the torture in Area 2 by former Commander Jon Burge and the officers under his command. The articles were published on December 2, 2005, and June 15, 2006.

¶ 29    The trial court denied English leave to file his successive petition. The court noted that the petition concerned one of two murder prosecutions against English and, in the other case (the Lewis murder), English had filed a petition on similar grounds. In holding the petition meritless, the court incorporated "by reference the evidentiary hearing on the other case, [the Lewis murder]."

¶ 30    This court affirmed the trial court's denial of leave to file, finding English's petition failed to establish a claim of actual innocence. *People v. English*, 2012 IL App (1st) 102732-U, ¶ 63. We found: (i) English failed to provide the required documentation for his claims of coercion regarding trial witnesses Lawrence and Sanders; (ii) the record affirmatively rebutted his claims as to those witnesses; (iii) the documentation English provided for his claims of coercion regarding trial witnesses Cole and Brown could have been presented in his initial postconviction proceedings and, therefore, was not new; (iv) the documentation regarding Cole and Brown did not support English's allegations of coercion where it "merely impeached or contradicted trial testimony"; and (v) English was collaterally stopped from claiming that Cole's testimony was coerced by the rejection of that same claim in a separate postconviction proceeding after a full evidentiary hearing. *Id.* ¶¶ 47, 57-60.

¶ 31    English filed a petition for rehearing arguing the appellate court's analysis and ruling was improper in light of the supreme court's decision in *People v. Edwards*, 2012 IL 111711, as well as its decision in *People v. Wrice*, 2012 IL 111860. We denied English's petition. The supreme court denied English leave to appeal, but exercised its supervisory authority and directed this court to vacate its previous judgment and reconsider in light of *Edwards* "to determine if a different result is warranted."

¶ 32    ANALYSIS

¶ 33    English contends he pled a colorable claim of actual innocence under *Edwards* to warrant further inquiry. English argues he should have been granted leave to file his successive petition for postconviction relief because he alleged a freestanding claim of actual innocence based on his claim that Detective McWeeny coerced the State's witnesses–Sanders, Lawrence, and Cole–to implicate him.

¶ 34    In support, English cites Sanders' trial testimony that he was hit in the hands with a flashlight. And, Lawrence's testimony that the police harassed and roughed him up when they first came to his apartment. As new evidence, English attached to his postconviction petition two newspaper articles, one from December 2005, the other from June 2006, naming Detective McWeeny as one of three former Area 2 detectives granted immunity in the investigation into police abuse at Area 2. English also attached affidavits from State witnesses Cole and Brown,

both of which were filed in the postconviction proceedings for the Lewis murder. English provided no affidavits from Lawrence or Sanders.

¶ 35    To be entitled to relief under the Act, a defendant must demonstrate a substantial deprivation of his constitutional rights in the proceedings that produced his conviction. *People v. Morgan*, 212 Ill. 2d 148, 153 (2004). The Act contemplates the filing of only one postconviction petition. *Morgan*, 212 Ill. 2d at 153. "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2010). The supreme court, however, has carved out an exception to this rule, relaxing the bar to successive postconviction petitions when fundamental fairness requires. *Morgan*, 212 Ill. 2d at 153. Generally, for a reviewing court to consider a defendant's successive postconviction petition on its merits, the defendant must show both "cause" for his or her failure to raise the claim in the initial postconviction petition and "prejudice" resulting from this failure. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459-60 (2002). Even if the defendant cannot meet the cause-and-prejudice test, the court may consider the successive petition if the defendant can show that consideration is "necessary to prevent a fundamental miscarriage of justice." *Pitsonbarger*, 205 Ill. 2d at 459. To demonstrate a fundamental miscarriage of justice, the defendant must show actual innocence.

¶ 36    To obtain relief under a theory of actual innocence based on "newly discovered" evidence, the defendant must offer evidence that was not available at the original trial and that could not have been discovered sooner through diligence. *Morgan*, 212 Ill. 2d at 154. In order to be considered, the evidence must be material, noncumulative, and of such a conclusive nature, that it would probably change the result on retrial. *People v. Washington*, 171 Ill. 2d 475, 489, (1996).

¶ 37    The supreme court's decision in *Edwards* clarified the standard that applies to successive petitions raising actual innocence and held that those petitions are not subject to first-stage summary review, *i.e.*, the "gist" standard analysis. *Edwards*, 2012 IL 111711, ¶¶ 26-30. The supreme court explained that successive postconviction petitions raising actual innocence "should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence." *Edwards*, 2012 IL 111711, ¶ 24. A colorable claim of actual innocence raises the probability that it is more likely than not that no reasonable juror would have convicted the defendant in light of the new evidence. *Edwards*, 2012 IL 111711, ¶¶ 31, 33. In discussing the standard, the supreme court reiterated the well-settled rule that successive postconviction actions are "disfavored." *Edwards*, 2012 IL 111711, ¶ 29 (citing *People v. Wright*, 189 Ill. 2d 1, 38 (1999) (Freeman, C.J., specially concurring, joined by McMorrow, J.)). *Edwards* did not decide the question of the applicable standard to review a trial court's decision to deny leave to file a successive claim of actual innocence, finding the result in that case would be the same under either an abuse of discretion or *de novo* standard. *Edwards*, 2012 IL 111711, ¶ 30.

¶ 38    In *Edwards*, the defendant's claim of actual innocence was based on three affidavits, two from alibi witnesses and the third from an alleged witness who would exonerate him as the shooter. *Edwards*, 2012 IL 111711, ¶¶ 12, 39. In rejecting the defendant's claim of actual innocence, the court assumed the truth of the affidavits, but found that because an alibi can never be newly discovered evidence (the accused would know he was not present), even if true,

- 7 -

the evidence was insufficient to raise a colorable claim of actual innocence. *Edwards*, 2012 IL 111711, ¶ 34. As to the third affidavit, the court found it would only be of value if the defendant had been convicted as a principal, but Edwards was convicted based on accountability and, therefore, he could not raise a colorable claim of actual innocence based on the information in that affidavit. *Edwards*, 2012 IL 111711, ¶ 39.

¶ 39 Based on *Edwards*, assuming all the factual allegations in his successive petition are true, English claims our review is limited to whether he presented a colorable claim of actual innocence. According to English, the colorable claim test is a "portal to a hearing, and not the hearing itself–as a pleading matter, it looks to see if the pleading alleges enough to create a 'fair probability' that an evidentiary hearing could produce a reasonable doubt exoneration." English suggests that factual disputes can only be resolved in an evidentiary hearing, not as a matter of pleading "unless that result is compelled as a matter of law."

¶ 40 English frames the question as whether the trial court, as the fact finder, should believe the pretrial accusations of Lawrence, Cole, and Sanders or believe their trial recantations. In his postconviction petition, English argues the defense theory that the State's witnesses were coerced into accusing him becomes more credible when considering Detective McWeeny's misconduct in light of the supporting evidence he included with his petition.

¶ 41 English argues the new evidence he presented is not that of a new and exonerating witness or a new recantation (the State's witnesses recanted at trial), but, instead, evidence that sheds light on why the State's witnesses initially accused English and then recanted–police misconduct. Thus, says English, the evidence of the improper police tactics would not only explain the State witnesses' recantations, but bolster their credibility by showing the recantations were truthful and that English was actually innocent. English claims the evidence of the State's witnesses' motivation (police coercion) for recanting their testimony could not have been obtained earlier.

¶ 42 English further argues that in denying him leave to file his successive petition, the trial court erred by applying the results in the Lewis postconviction proceedings to deny the successive petition in this case. By so doing, the trial court improperly evaluated the sufficiency and weight of the evidence at stage one. English argues the trial court should have advanced his successive petition to appoint counsel and hold an evidentiary hearing to determine whether English should have been granted a new trial based on his claims of newly discovered evidence of his actual innocence. Only then, at the third-stage hearing, could the trial court weigh the evidence of police misconduct against the strength of the State's evidence and decide whether to order a new trial.

¶ 43 The State characterizes English's argument as applying the "gist" standard, that is, the allegations in his successive petition should be scrutinized to determine whether he demonstrated a colorable claim of actual innocence, not his proofs. The State contends English's position is that if his allegations are sufficient, leave to file should have been granted and further proceedings ordered.

¶ 44 The State argues that in *Edwards*, the supreme court did not intend for the colorable claim standard to be "a mere pleading standard," but a standard that restricts review of successive postconviction petitions only to those that truly relate to an unjust incarceration of the defendant. Those cases that are "truly 'extraordinary.' " See *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (colorable claim standard "ensures that petitioner's case is truly 'extraordinary'

[citation] while still providing petitioner a meaningful avenue by which to avoid a manifest injustice"). We agree.

¶ 45    In holding that successive petitions alleging actual innocence are not subject to the cause-and-prejudice test, the supreme court stated successive petitions were not to be treated as an original petition under the Act and to proceed unless frivolous and patently without merit. *Edwards*, 2012 IL 111711, ¶¶ 24-29. The supreme court looked to *habeas* law and adopted the federal "colorable claim" standard to judge a request for a successive petition claiming newly discovered evidence of actual innocence. *Edwards*, 2012 IL 111711, ¶ 24. The supreme court held that to present a colorable claim of actual innocence, the "petitioner's request for leave of court *and his supporting documentation* [must] raise the probability that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." (Emphasis added.) *Edwards*, 2012 IL 111711, ¶ 31. Accordingly, before leave to file a successive postconviction petition can be granted, the petition must not only allege actual innocence, but also must offer evidence "of such conclusive character that it would probably change the result on retrial." *Edwards*, 2012 IL 111711, ¶ 32 (citing *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009)). The court continues, citing *Schlup*, "claims must be supported 'with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.' " *Edwards*, 2012 IL 111711, ¶ 32 (quoting *Schlup*, 513 U.S. at 324).

¶ 46    The Act does not define what a court may consider in determining whether leave to file a successive petition should be granted. As the State points out, a defendant's satisfaction of the Act's cause requirement almost always involves consideration of facts *de hors* the record. Thus, that the circuit court considered information outside of the court record is not, by itself, impermissible. In fact, in his successive petition, English specifically requested the court consider Cole's testimony from the evidentiary hearing in the Lewis post conviction proceedings to support his claims here. That being said, we agree with English that the trial court erred by considering the results of the evidentiary hearing in the Lewis postconviction proceedings to deny him leave to file a successive petition in the Black case. We do not, however, find that error requires a different result under *Edwards*.

¶ 47    We turn now to our supreme court's analysis of the evidence in *Edwards* to guide us in our review of the trial court's analysis of the evidence English presented to support his claim of innocence. The *Edwards* court carefully considered each piece of supporting documentation Edwards claimed met the legal standard for "newly discovered." *Edwards*, 2012 IL 111711, ¶ 32. Finding some of the evidence was not new and the remainder would not have changed the result on retrial, the supreme court held Edwards failed, as a matter of law, to show that leave to file a successive petition should have been granted. *Edwards*, 2012 IL 111711, ¶¶ 34, 40-41.

¶ 48    The inquiry for us then becomes whether English's request for leave of court to file a successive postconviction petition *and* his supporting documentation raise the probability it is more likely than not that no reasonable juror would have convicted him in view of the new evidence. *Edwards*, 2012 IL 111711, ¶ 31. In the earlier appeal affirming the trial court's denial, we did not specifically address the "colorable claim of actual innocence" standard of *Edwards*; however, a different result is not warranted based on that standard.

¶ 49    We have carefully examined English's supporting documentation, and as before, find it falls below the legal requirements of "newly discovered" evidence such that a valid claim of

actual innocence could be made. To qualify as newly discovered evidence, the evidence must have been unavailable at trial and could not have been discovered sooner through due diligence. *Morgan*, 212 Ill. 2d at 154. Evidence is not newly discovered if it presents facts already known to the defendant, even if the source of those facts was unknown, unavailable or uncooperative. *People v. Jarrett*, 399 Ill. App. 3d 715, 723 (2010).

¶ 50    English's claim of actual innocence based on newly discovered evidence was centered on his allegation that the police coerced the State's witnesses into implicating him in the shooting of Black. To support his claim, English cited Sanders' trial testimony that a police officer hit him in the hand with a flashlight and Lawrence's testimony that he was harassed and roughed up by the police. The "newly discovered" evidence included two dated newspaper articles naming Detective McWeeny as one of the former Area 2 detectives that had been granted immunity in the investigation into police misconduct at Area 2. English also attached a copy of a 10-year-old affidavit from State witness Cole, which English had filed in the Lewis postconviction proceedings, and a copy of a 5-year-old affidavit from Brown, an alleged witness to the murder of Lewis, which he had also filed in the Lewis postconviction proceedings.

¶ 51    In his affidavit, Cole contradicted his statements to the police and grand jury regarding the Black murder. He claimed he did not see the person who shot Black. He said the police told him what to say from "day one" and that both the police and prosecutor threatened to charge him with the murder of Lewis if he changed his testimony during trial. Cole did not allege that he was physically abused by Detective McWeeny. We acknowledge that no one alleges that McWeeny himself acted abusively.

¶ 52    Nevertheless, the evidence shows English could have presented the issue of the alleged police coercion of the State's witnesses during his initial postconviction petition. Both affidavits were available to English before the second-stage dismissal of his initial postconviction petition. Moreover, the newspaper articles do not support a finding that Detective McWeeny abused any of the witnesses in this case. There is no link between the information in the article and English's case. Cole never claimed that Detective McWeeny physically beat or abused him to coerce him into implicating English in the shooting.

¶ 53    As in Edwards, the alleged newly discovered evidence was "not 'of such conclusive character that it would probably change the result on retrial.' " *Edwards*, 2012 IL 111711, ¶ 40 (quoting *Morgan*, 212 Ill. 2d at 154). English's successive petition and accompanying documentation did not support his claims of coercion as to Lawrence and Sanders. Neither Lawrence nor Sanders provided an affidavit supporting English's allegations that their accusations were coerced. At trial, Lawrence explicitly denied Detective McWeeny hit him. Sanders testified a police officer hit him with a flashlight, but he did not identify Detective McWeeny as the officer. Sanders' testimony was impeached with his previous statement that he was hit with a stick.

¶ 54    We recognize that our supreme court has found that allegations of police misconduct can support granting leave to file a successive postconviction petition. *People v. Wrice*, 2012 IL 111860 (defendant granted leave to file second successive postconviction petition on basis that newly discovered evidence supported prior claim that his confession was product of police torture and brutality). Generalized claims of abuse do not suffice to support a claim of coercion; there must be a direct link to specific abuses in defendant's case. *People v. Anderson*,

402 Ill. App. 3d 1017, 1036 (2010) ("We have previously held that '[g]eneralized claims of misconduct, without any link to defendant's case, *i.e.*, some evidence corroborating defendant's allegations, or some similarity between the type of misconduct alleged by defendant and that presented by the evidence of other cases of abuse, are insufficient to support a claim of coercion.' " (quoting *People v. Anderson*, 375 Ill. App. 3d 121, 137-38 (2006))). In *Wrice*, the defendant alleged and offered evidence of methods and abuse consistent with the misconduct uncovered by the reports and cases defendant cited. Defendant provided consistent claims of abuse " 'strikingly similar' " to the abuses discovered by the earlier investigations, including the same officers and the same methods of abuse and torture. *People v. Wrice*, 406 Ill. App. 3d 43, 53 (2010), *aff'd as modified*, 2012 IL 111860.

¶ 55　　Here, no "strikingly similar" claims of physical abuse exist, and the witnesses only claimed a general threat, not that they were physically intimidated by the police. Moreover, unlike the cases in which police misconduct has supported a claim of actual innocence, English did not consistently claim that the police physically abused his accusers to coerce them into implicating him. Nor did the witnesses claim as much. Before the grand jury, Cole testified that he had not been threatened or promised anything in return for his testimony. At trial, although he recanted his earlier testimony, Cole did not testify that he had been physically abused or otherwise coerced by the police into implicating English. He only claimed that he had been pressured into providing information against English to avoid being charged as the principal in the Lewis murder. The allegations of police abuse arose for the first time in English's successive postconviction petition. Without "some evidence corroborating defendant's allegations, or some similarity between the type of misconduct alleged by defendant and that presented by the evidence of other cases of abuse" (*Anderson*, 375 Ill. App. 3d at 137-38), English has failed to provide the necessary support for his request to file a successive postconviction petition.

¶ 56　　Even assuming all of English's supporting documentation to be true, the facts presented do not warrant further proceedings under the Act. English's allegations are too general to meet the procedural requirements of a successive postconviction petition alleging actual innocence. Accordingly, the trial court properly denied him leave to file a successive petition.

¶ 57　　Just as in *Edwards*, we need not decide whether the standard of review is *de novo* or abuse of discretion; under either standard, English's supporting documentation is unavailing.

¶ 58　　　　　　　　　　　　　　　CONCLUSION

¶ 59　　Applying the standard our supreme court devised in *Edwards* for evaluating claims of actual innocence in a successive postconviction petition, the trial court properly denied English leave to file; it is clear as a matter of law that English cannot assert a colorable claim of actual innocence. English's successive petition has not met the procedural requirements of a successive postconviction petition alleging actual innocence in that the proposed evidence did not qualify as newly discovered evidence under the Act.

¶ 60　　Affirmed.